CREGO v COLEMAN

Docket No. 192798. Released November 14, 1997, at 9:05 A.M.; vacated November 26, 1997.

Before: DOCTOROFF, P.J., and MACKENZIE and GRIFFIN, JJ.

GRIFFIN, J. Defendant appeals by leave granted a circuit court order denying rehearing of an order granting plaintiff's motion for an increase in defendant's child support obligation. We reverse only because we are compelled to do so pursuant to MCR 7.215(H). Were we allowed, we would affirm and hold MCL 722.713; MSA 25.493 unconstitutional as violative of the equal protection guarantees of the United States and Michigan Constitutions.

I

The relevant facts are not in dispute and, except for the most recent developments, are set forth in our previous decision, *Crego v Coleman*, 201 Mich App 443; 506 NW2d 568 (1993). In October 1978, plaintiff filed a paternity action alleging that defendant fathered her daughter, born in

August 1978.[1] In 1980, the trial court dismissed the complaint pursuant to a settlement agreement reached between the parties whereby defendant agreed to pay weekly child support but did not acknowledge paternity. The trial court's original order, dated July 10, 1980, approved the terms of the settlement as required by § 3 of the Paternity Act, MCL 722.713; MSA 25.493,[2] and ordered defendant to pay $20 a week in child support until the friend of the court made its formal recommendation. Pending receipt of the recommendation, the trial court entered a second order, on September 26, 1980, requiring defendant to pay $35 a week. This second order specified the parties' intent that the support order be "not modifiable" and that the matter "shall stand settled, discontinued and dismissed" with respect to defendant. After the recommendation was received, a final "permanent" order was entered on January 30, 1981, requiring defendant to pay $50 a week until the child was eighteen years old "or until further order of the court."

In the early 1990s, plaintiff filed a motion to modify the child support order, but the trial court dismissed on the basis of res judicata. A divided panel of this Court affirmed, holding that the parties' paternity settlement was controlling and precluded a modification of defendant's support obligation.[3] The majority applied MCL 722.713(b); MSA 25.493(b) to the effect "[t]hat [the] statutory bar prevents modification of the support order unless the parties provide for modification in the language of their settlement agreement." *Crego, supra* at 447. In addition, the *Crego* majority rejected plaintiff's claim that MCL 722.713; MSA 25.493 denies illegitimate children their constitutional right of equal protection of the law:

---

[1] We acknowledge that the child has now reached the age of majority. However, the amount of support owed through her eighteenth birthday remains at issue. Further, this appeal involves questions of public significance that may recur and yet evade review. *In re Rosebush*, 195 Mich App 675, 678; 491 NW2d 633 (1992).

[2] Section 3 of the Paternity Act, MCL 722.713; MSA 25.493, provides:

(a) An agreement or compromise made by the mother or child or by some authorized person on their behalf with the father concerning the support and education of the child shall be binding upon the mother and the child only when the court having jurisdiction to compel support and education of the child shall have determined that adequate provision is reasonably secured by payment or otherwise and has approved the agreement or compromise.

(b) The performance of the agreement or compromise, when so approved, shall bar other remedies of the mother or child for the support and education of the child.

[3] Judge GRIFFIN dissented on the basis that the language of the trial court's final order allows for modification. *Crego, supra* at 448. Accord *Van Laar v Rozema*, 94 Mich App 619, 623; 288 NW2d 667 (1980).

In *Hisaw* [*v Hayes*, 133 Mich App 639, 642; 350 NW2d 302 (1984)], this Court rejected the equal protection argument raised on behalf of an illegitimate child and recognized the binding effect of a settlement in a paternity matter. Declining to follow *Boyles v Brown*, 69 Mich App 480; 245 NW2d 100 (1976), and relying on MCL 722.713; MSA 25.493, this Court held:

"The right of an illegitimate child to equal protection of law does not justify depriving the alleged father of the right to a trial of a disputed question of paternity. We decline to follow *Boyles, supra*, to the extent that in a paternity settlement like that at issue here, it would permit a court to increase an alleged father's support obligation, albeit leaving him bound by his agreement to surrender his right to a judicial determination of paternity. Such a settlement cannot be modified, the only judicial remedy being rescission. [*Hisaw, supra* at 644-645.]"

We believe *Hisaw* to be the better-reasoned opinion, and we choose to follow it. [*Crego, supra* at 446.]

Subsequently, in *Dones v Thomas*, 210 Mich App 674; 534 NW2d 221 (1995), a different panel of this Court declared MCL 722.713; MSA 25.493 unconstitutional as violative of the constitutional guarantees of equal protection because it authorizes nonmodifiable child support awards in paternity actions, while child support awards in divorce actions always remain modifiable. On the basis of this later decision, plaintiff renewed her motion for modification of the support order, seeking to compel defendant to provide medical insurance for her daughter. The circuit court concluded that it was required to follow *Dones*, the more recent decision, and granted plaintiff's motion.

II

On appeal, defendant argues that the lower court committed error requiring reversal by following *Dones* rather than this Court's prior and precedentially binding decision in *Crego*. We agree. Pursuant to MCR 7.215(H), the lower court and this Court must follow *Crego*, the first post-November 1, 1990, published opinion to render a holding with respect to the issue. Therefore, *Crego* is the controlling precedent, and the lower court erred in following *Dones*. However, were we not bound by *Crego*, we would follow *Dones* and hold MCL 722.713; MSA 25.493 unconstitutional as violative of the equal protection guarantees of the United States and Michigan Constitutions. In doing so, we would join Illinois, Wisconsin, and the United States District Court for the Southern District of New York in declaring that state statutory schemes that bar modification of child support orders in paternity actions, but not in divorce actions, deny illegitimate children equal protection of the law.

III

The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied equal protection of the law. US Const, Am XIV; Const 1963, art 1, § 2; *Spada v Pauley*, 149 Mich App

196, 203; 385 NW2d 746 (1986). The constitutional guarantee requires that persons similarly situated be treated alike. *El Souri v Dep't of Social Services*, 429 Mich 203, 207; 414 NW2d 679 (1987). While the clause restrains the use of governmental classifications generally, federal and state courts have specified that statutes that distinguish on the basis of certain "protected" classes such as race, alienage, gender, or legitimacy must be judged by stricter standards. See *Clark v Jeter*, 486 US 456, 461; 108 S Ct 1910; 100 L Ed 2d 465 (1988); *Lalli v Lalli*, 439 US 259; 99 S Ct 518; 58 L Ed 2d 503 (1978); *Dep't of Civil Rights ex rel Forton v Waterford Twp Dep't of Parks & Recreation*, 425 Mich 173, 190; 387 NW2d 821 (1986); *Frame v Nehls*, 208 Mich App 412; 528 NW2d 773 (1995); *Spada, supra* at 203. Classifications based on illegitimacy are subjected to intermediate or "heightened scrutiny" and are unconstitutional unless "substantially related to permissible state interests." *Spada, supra* at 203.

Pursuant to MCL 722.713; MSA 25.493, the parties in a paternity action may reach a settlement agreement that permanently bars illegitimate children from obtaining modification of child support to meet changing needs. In other words, the statute authorizes a putative father to waive a judicial determination of paternity in exchange for a permanent, unmodifiable support order, thus forever precluding illegitimate children from obtaining additional support. In contrast, children of divorced couples may petition the court to modify a support award upon a showing of a change in circumstances. MCL 552.17(1); MSA 25.97(1).[4] Thus, unlike legitimate children, illegitimate children not subject to a filiation order may be foreclosed from future modification of child support, regardless of need.

IV

In our prior decision in this matter, this Court upheld as constitutional the statutory scheme at issue.[5] However, in the present appeal we conclude that *Crego* was wrongly decided for the reason that the unequal statutory treatment based on illegitimacy cannot withstand heightened constitutional scrutiny.

---

[4] We recognize that MCL 722.720; MSA 25.500 allows children born out of wedlock to, in some circumstances, petition the court for a change in support on the basis of a change in circumstances. However, this provision applies only where there is an order of filiation and does not protect illegitimate children where the father has settled the paternity suit without acknowledging paternity.

[5] The issue involving the doctrine of law of the case was neither addressed by the lower court nor briefed by the parties. *Lawrence v Will Darrah & Associates, Inc*, 445 Mich 1, 4, n 2; 516 NW2d 43 (1994). We chose not to address it other than to note that the doctrine is discretionary and can give way when constitutional rights are implicated. *Locricchio v Evening News Ass'n*, 438 Mich 84, 108-110; 476 NW2d 112 (1991).

In *Gerhardt v Estate of Moore*, 150 Wis 2d 563; 441 NW2d 734 (1989), the Wisconsin Supreme Court invalidated on equal protection grounds a similar statute. In *Gerhardt*, the court rejected the rationale of *Crego* on the basis that the father's interest in a final settlement is "undercut by the countervailing state interest in the continued adequacy of support for the child." *Id.* at 573-574. The Wisconsin Supreme Court stated that "it is difficult to see how the interest in promoting settlements justifies a total waiver of future child support regardless of the child's future needs or the father's ability to pay." *Id.* at 573; accord *Williams v Lambert*, 902 F Supp 460 (SD NY, 1995). See also *Dep't of Public Aid ex rel Cox v Miller*, 146 Ill 2d 399, 405-410; 166 Ill Dec 922; 586 NE2d 1251 (1992) (agreeing with the reasoning in *Gerhardt, supra*).

Earlier, in *Boyles v Brown*, 69 Mich App 480, 482-484; 245 NW2d 100 (1976), this Court employed similar reasoning in ruling on a predecessor statute:

Relevant case law further belies the trial court's belief that equality of treatment between legitimate and illegitimate children is contrary to public policy. In *Whybra v Gustafson*, 365 Mich 396; 112 NW2d 503 (1961), our Supreme Court announced a public policy of this state to treat children born out of wedlock as no less deserving of support than those children born in wedlock. The Court stated that, "[i]n terms of need for support and education, we see no difference between children born in and out of wedlock". *Id.* at 400. Although *Whybra* concerned itself with arbitrary classification in the context of ordering less support for illegitimate children in the original decree, we are satisfied that its rationale applies with equal force to the modification of support.

More recently, the United States Supreme Court, in *Gomez v Perez*, 409 US 535; 93 S Ct 872; 35 L Ed 2d 56 (1973), found disparate statutory treatment between legitimate and illegitimate children to be constitutionally invalid. The *Gomez* decision held that the laws of Texas could not constitutionally grant legitimate children a judicially enforceable right to support from their natural fathers while denying the same right to illegitimate children. In so holding, the Court reaffirmed earlier decisions which concluded that "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." *Id.* at 538. See also, Krause, *Equal Protection for The Illegitimate*, 65 Mich L Rev 477 (1967).

Michigan has accorded a substantial benefit to children born in wedlock by providing for statutory procedures to modify support in divorce or separation cases. See MCLA 552.17; MSA 25.97; MCLA 552.252a; MSA 25.172(1) and MCLA 552.455; MSA 25.222(5). Although the paternity act provides no explicit procedure for modifying support provisions, its clear language, bolstered by judicial mandate, compels us to accord the same benefit to children born out of wedlock, *viz.*, the right to petition the court for a change in support based on altered circumstances.

The *Boyles* panel relied in part on *Gomez v Perez*, 409 US 535, 538; 93 S Ct 872; 35 L Ed 2d 56 (1973). In *Gomez*, the United States Supreme Court held that a state statute that granted legitimate children a judicially enforceable right of support from their natural fathers but that denied a similar right to illegitimate children was unconstitutional as a violation of the guarantee of equal protection. In so ruling, the United States Supreme Court stated:

> [A] State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother. For a State to do so is "illogical and unjust." *Weber v Aetna Casualty & Surety Co*, [406 US 164, 175; 92 S Ct 1400; 31 L Ed 2d 768 (1972).] [*Id.*]

Further, the United States Supreme Court recognized in *Gomez* that although the father's interests "cannot be lightly brushed aside, neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination." *Gomez, supra* at 538. The United States Supreme Court has consistently followed the *Gomez* rationale by declaring as unconstitutional several state statutes that limited the time for establishing paternity. See *Clark, supra; Pickett v Brown*, 462 US 1; 103 S Ct 2199; 76 L Ed 2d 372 (1983); *Mills v Habluetzel*, 456 US 91; 102 S Ct 1549; 71 L Ed 2d 770 (1982). See also *Spada, supra.*

In regard to the present issue, this line of established authority was followed and adopted by the Wisconsin Supreme Court in *Gerhardt, supra* at 571-572:

> Similar to the procedural bars invalidated in the *Clark* line of cases, the lump-sum settlement provision[6] deprives certain nonmarital children the opportunity to obtain adequate support. Although *Clark* and the cases cited therein deal with statutory limitation bars to the filing of actions, the bar to seeking additional child support that results from a lump sum agreement works in precisely the same manner. Regardless of the label attached to the statutory bar, the result is the same. The nonmarital child, unlike the marital child, is barred from seeking additional support, regardless of need. That is hardly fair to the nonmarital child, much less constitutional.

See also *Williams, supra*, and *Dep't of Public Aid ex rel Cox, supra.*

---

[6] For the purposes of our analysis, we see no marketable difference between the lump-sum agreement involved in *Gerhardt* and the installment-support arrangement to which defendant agreed in settlement. Each situation involves a fixed, unmodified amount that cannot be altered.

V

We agree with the reasoning of the above authorities that conclude that an alleged putative father's interests in resolving issues of paternity and support are insufficient to justify discrimination based on illegitimacy. The state interest served by MCL 722.713; MSA 25.493—securing a prompt and final settlement of these issues—is not sufficiently strong to overcome the permanent and potentially devastating effect that the settlement may have on the financial needs of illegitimate children. Indeed, legitimate and illegitimate children do not differ in their potential for encountering circumstances that may increase their need for financial support. See *Boyles, supra* at 483, quoting *Whybra v Gustafson*, 365 Mich 396; 112 NW2d 503 (1961) ("[i]n terms of need for support and education we see no difference between children born in and out of wedlock").

Further, unlike in the past when the factual determination of paternity was often a difficult credibility contest, recent scientific innovations now provide for quicker, easier, and more accurate methods of testing for paternity. See *Dones, supra* at 678-679; *Pickett, supra* at 11, quoting *Mills, supra* at 104, n 2 (O'CONNOR, J., concurring); *Dep't of Public Aid ex rel Cox, supra* at 407; *Gerhardt, supra* at 577. See, generally, *Clark, supra* at 465 ("increasingly sophisticated tests for genetic markers permit the exclusion of over 99% of those who might be accused of paternity").

Accordingly, the state's interest in avoiding trial on the previously difficult and time-consuming issue of paternity no longer exists. For these reasons, after applying a heightened scrutiny test for equal protection, we conclude that a sufficient "substantially related" state interest does not exist to sustain the statute against the constitutional challenge.

VI

Accordingly, were we permitted to do so, we would affirm and hold MCL 722.713; MSA 25.493 of the Paternity Act unconstitutional as violative of the equal protection guarantees of the United States and Michigan Constitutions. Because our holding would in effect withdraw the bargained-for consideration defendant expected to receive for agreeing to waive a trial on the issue of paternity, we would give our holding only limited retroactive effect in that we would permit defendant and other similarly situated putative fathers to contest the issue of paternity. *Lindsey v Harper Hosp,* 455 Mich 56, 67; 564 NW2d 861 (1997); *Tebo v Havlik,* 418 Mich 350, 360-361; 343 NW2d 181 (1984). Defendants who chose not to contest paternity and all prospective defendants in paternity actions would be subject to the potential for modification of child support obligations for their illegitimate children.

Reversed.