JOHNSON v WHITE

Docket Nos. 241414, 241992. Submitted December 2, 2003, at Grand Rapids. Decided March 23, 2004, at 9:05 A.M.

Amelia D. and Harvey C. Johnson were granted grandparenting time with the minor children of Gregory D. White in the Berrien Circuit Court, Family Division, Thomas E. Nelson, J. White violated the order by moving to Colorado with the children. The Court of Appeals then decided *DeRose v DeRose*, 249 Mich App 388 (2002), which held that the statute under which the order of grandparenting time was based, MCL 722.27b, is unconstitutional. White then moved to vacate the grandparenting time order on the basis of the *DeRose* decision, which had been appealed to the Supreme Court. The trial court denied the motion and found the defendant in contempt for violating the order. The defendant appealed from both the order denying his motion to vacate the grandparenting time order and from the trail court's denial of the defendant's motion to vacate the judgment of contempt. The appeals were consolidated.

The Court of Appeals *held*:

The *DeRose* decision should be given full retroactive effect. The order granting grandparenting time was void ab initio and must be vacated. Had the trial court granted the motion to vacate that order, it would have been without jurisdiction over the subject matter of the contempt order. The court erred in denying the motion to vacate the judgment of contempt. That order must be reversed.

1. The *DeRose* decision clearly established a new principle of law. The purpose of the *DeRose* decision would be best served by giving it full retroactive application. All orders of grandparenting time based on and entered since the enactment of MCL 722.27b, effective December 17, 1982, are void ab initio and are no longer to be given legal effect.

2. The general rule that a person may not disregard a court order simply on the basis of the person's subjective view that the order is wrong or will be declared invalid on appeal applies only to an order issued by a court with jurisdiction over the subject matter and the person.

3. The trial court erred in relying on MCR 7.215(F)(1)(a) to find that *DeRose* was not a final judgment with precedential effect. That court rule pertains to only the timing of when a judgment of the Court of Appeals becomes final with regard to the parties to that appeal. MCR 7.215(C)(2) clearly provides that neither the filing of an application for leave to appeal to the Supreme Court nor an order granting such leave diminishes the precedential effect of a published opinion of the Court of Appeals.

4. Giving precedential effect to *DeRose* required that the trial court grant the defendant's motion to vacate the grandparenting time order. Had the court taken this appropriate action, it would have been without jurisdiction over the subject matter of the contempt order. The court erred in denying the motion to vacate the judgment of contempt. That order must be reversed.

Order granting grandparenting time vacated and order denying motion to vacate judgment of contempt reversed.

BORRELLO, J., concurred in the result only for the sole reason that the Court of Appeals is bound by the Supreme Court's ruling in *DeRose v DeRose*, 469 Mich 320 (2003), and must follow the Court of Appeals decision in *DeRose*. Were it not for such binding precedent, the dissenting opinion of Justice KELLY in *DeRose*, which would find the statute to be constitutional, should be followed. It should be further noted that the jurisprudence of this state does not recognize a fundamental right to parent.

1. PARENT AND CHILD — GRANDPARENTING TIME ORDERS — CONSTITUTIONAL LAW.

All orders of grandparenting time based on and entered since the enactment of MCL 722.27b, effective December 17, 1982, are void ab initio and are no longer to be given legal effect; the opinion of the Court of Appeals in *DeRose v DeRose*, 249 Mich App 388 (2002), that determined the statute to be unconstitutional must be given full retroactive effect.

2. MOTIONS AND ORDERS — CONTEMPT.

The general rule that a person may not disregard a court order simply on the basis of his subjective view that the order is wrong or will be declared invalid on appeal applies only to an order issued by a court with jurisdiction over the subject matter and the person.

*Berecz & Klawiter, PLC* (by *Marilyn Klawiter*), for the plaintiffs.

*Varnum, Riddering, Schmidt & Howlett LLP* (by *Peter Armstrong*), and *Michael J. Steinberg* and *Kary L. Moss*, and *Lorray S.C. Brown* and *Lynelle D. Morgan*, for the defendant.

Before: SMOLENSKI, P.J., and SAWYER and BORRELLO, JJ.

SMOLENSKI, P.J. Defendant violated the trial court's January 10, 2001, order granting plaintiffs grandparenting time when he moved his children to Colorado, thus circumventing plaintiffs' visitation. As a result, a judgment of contempt was entered against defendant. Defendant moved to vacate the court's order regarding grandparenting time, arguing that it was void ab initio pursuant to this Court's decision in *DeRose v DeRose,* 249 Mich App 388; 643 NW2d 259 (2002), which held MCL 722.27b unconstitutional. Defendant asserted that because the grandparenting time order was void, the contempt order stemming from its violation was also void. The trial court denied defendant's motion to vacate the grandparenting time order, stating that the *DeRose* decision had no precedential value because, at the time, leave was pending before the Michigan Supreme Court and, therefore, the decision was not final. The court also refused to vacate the contempt judgment. Defendant appealed both orders, and the appeals were consolidated.

Subsequently, the trial court waived jurisdiction in this matter in order for plaintiffs to seek enforcement of their grandparenting time in Colorado. Although this action renders the issue of the validity of the grandparenting time order moot, we address it here because of the significant public question it presents and the sheer certainty of this issue being raised on appeal again. *Federated Publications, Inc v City of Lansing,* 467 Mich 98, 112; 649 NW2d 383 (2002). We hold that the *DeRose*

decision should be given full retroactive effect and vacate the trial court's January 10, 2001, order granting plaintiffs grandparenting time because the order is void ab initio. We also find that the court abused its discretion in refusing to vacate the April 22, 2002, judgment of contempt because it failed to give the *DeRose* decision its proper precedential effect. Accordingly, we reverse that order.

## I. THE *DEROSE* DECISION

In 2000, the United States Supreme Court addressed the constitutionality of the state of Washington's third-party visitation statute in *Troxel v Granville*, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49 (2000). The Court found that the statute, on its face, unconstitutionally infringed parents' fundamental rights under the federal constitution to rear their children. *Id.* at 62-64. The *Troxel* decision led this Court to address the constitutionality of Michigan's grandparent visitation statute, MCL 722.27b. In *DeRose, supra* at 394-395, relying on the analysis in *Troxel*, this Court held that "the lack of standards in the Michigan statute beyond 'the best interests of the child,' and specifically the failure of the statute to afford any deference to the custodial parent's decision, renders the Michigan statute unconstitutional as written." Consistently with its decision, the Court vacated the trial court's order granting the plaintiff visitation of the minor child, but it did not address whether its decision should be applied retroactively or have prospective application only; an issue we decide here.[1]

---

[1] The Supreme Court affirmed the *DeRose* decision, 469 Mich 320; 666 NW2d 636 (2003), but likewise did not address the issue of retroactivity.

II. PROSPECTIVE VERSUS RETROACTIVE APPLICATION

The main issue on appeal is whether this Court's decision in *DeRose, supra,* should be applied retroactively. The retroactive effect of a court's decision is a question of law that this Court reviews de novo. *Sturak v Ozomaro,* 238 Mich App 549, 559; 606 NW2d 411 (1999).

As a general rule, an unconstitutional statute is void ab initio; it is void for any purpose and is as ineffective as if it had never been enacted. *Stanton v Lloyd Hammond Produce Farms,* 400 Mich 135, 144-145; 253 NW2d 114 (1977). Pursuant to this rule, decisions declaring statutes unconstitutional have been given full retroactive application. See, e.g., *id.* at 145; *Briggs v Campbell, Wyant & Cannon Foundry Co,* 379 Mich 160; 150 NW2d 752 (1967); *Horrigan v Klock,* 27 Mich App 107; 183 NW2d 386 (1970). Another general rule is that judicial decisions are to be given complete retroactive effect. *Michigan Ed Employees Mut Ins Co v Morris,* 460 Mich 180, 189; 596 NW2d 142 (1999). However, these rules are not blindly followed without concern for principles of justice and fairness. As the Court recognized in *Stanton, supra* at 147, "certain factual circumstances might warrant the retroactive application of an unconstitutional statute."

In recent decades, Michigan has adopted a flexible approach to determining whether a decision should be applied retroactively or prospectively, which involves the threshold question of

> whether that decision is establishing a new principle of law, either by overruling clear past precedent on which the parties have relied or by deciding an issue of first impression where the result would have been unforeseeable to the parties. If the decision does not announce a new principle of law, then full retroactivity is favored. [*Michigan Ed Employees, supra* at 190-191.]

Where the decision does reflect a new principle of law, our Supreme Court has acknowledged that " 'resolution of the retrospective-prospective issue ultimately turns on considerations of fairness and public policy,' " and has employed a three-part test to determine to what extent, if any, a decision should receive retroactive application. Under this test, the Court weighs " '(1) the purpose to be served by the new rule, (2) the extent of reliance on the old rule, and (3) the effect of retroactivity on the administration of justice.' " *Id.* at 190, quoting *Riley v Northland Geriatric Ctr (After Remand)*, 431 Mich 632, 644-646; 433 NW2d 787 (1988).[2] However, this test has not been universally employed, and, in some cases, the second and third factors meld together " 'because the amount of past reliance will often have a profound effect upon the administration of justice.' " *Hall v Novik*, 256 Mich App 387, 397 n 8; 663 NW2d 522 (2003), quoting *People v Hampton*, 384 Mich 669, 677; 187 NW2d 404 (1971). Therefore, these three factors appear to comprise a guideline test to be utilized by the courts as a decision-making aid, rather than an affirmative test, the outcome of which would mandate the court's decision. See *Sturak, supra* at 561.

---

[2] This three-part test was first enunciated by the United States Supreme Court in *Linkletter v Walker*, 381 US 618, 629; 85 S Ct 1731; 14 L Ed 2d 601 (1965), a criminal case, and later utilized in a civil case, *Chevron Oil Co v Huson*, 404 US 97, 106-107; 92 S Ct 349; 30 L Ed 2d 296 (1971). Our Supreme Court first adopted this test in *People v Hampton*, 384 Mich 669, 674; 187 NW2d 404 (1971). We note that the United States Supreme Court abandoned the three-part test in *Harper v Virginia Dep't of Taxation*, 509 US 86, 97;113 S Ct 2510; 125 L Ed 2d 74 (1993), stating:

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

Recently, our Supreme Court embarked on this three-part analysis in *Pohutski v City of Allen Park*, 465 Mich 675; 641 NW2d 219 (2002), when it revisited the issue whether § 7 of the governmental tort liability act, MCL 691.1407, permitted a trespass-nuisance exception to governmental immunity. The Court held that no such exception existed under the statute and, in so holding, overruled *Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139; 422 NW2d 205 (1988), and other cases to the contrary. Continuing, the Court stated, "However, because we are mindful of the effect our holding will have on the administration of justice, we conclude that limiting our holding to prospective application is appropriate." *Pohutski, supra* at 679.

In determining whether to give its decision retroactive effect, the Court first addressed the threshold question, whether the decision established a new principle of law, and concluded, *id.* at 696, that "practically speaking our holding is akin to the announcement of a new rule of law," given the Court's erroneous interpretations set forth in *Hadfield, supra,* and *Li v Feldt (After Remand)*, 434 Mich 584; 456 NW2d 55 (1990). Analyzing the issue under the three-part test, the *Pohutski* Court stated:

> First, we consider the purpose of the new rule set forth in this opinion: to correct an error in the interpretation of § 7 of the governmental tort liability act. Prospective application would further this purpose. See *Riley, supra* at 646. Second, there has been extensive reliance on *Hadfield's* interpretation of § 7 of the governmental tort liability act. In addition to reliance by the courts, insurance decisions have undoubtedly been predicated upon this Court's longstanding interpretation of § 7 under *Hadfield*: municipalities have been encouraged to purchase insurance, while homeowners have been discouraged from doing the same. Prospective application acknowledges that reliance. Third, prospective application minimizes the effect of

this decision on the administration of justice. Consideration of recently enacted 2001 PA 222 strengthens our determination to limit our holding to prospective application. 2001 PA 222 amends the governmental tort liability act to provide a remedy for damages or physical injuries caused by a sewage disposal system event. [*Pohutski, supra* at 697.]

The Court determined that 2001 PA 222 did not apply retroactively and considerations of justice necessitated limiting its holding to prospective application only:

Given the absence of any language indicating retroactive effect, the forty-five-day notice limit, and the presumption that statutes operate prospectively, we conclude that 2001 PA 222 does not apply retroactively.

Thus, if we applied our holding in this case retroactively, the plaintiffs in cases currently pending would not be afforded relief under *Hadfield* or 2001 PA 222. Rather, they would become a distinct class of litigants denied relief because of an unfortunate circumstance of timing.

Accordingly, this decision will be applied only to cases brought on or after April 2, 2002. In all cases currently pending, the interpretation set forth in *Hadfield* will apply. [*Pohutski, supra* at 698-699.]

Other cases have dealt with this issue in the context of a statute's being found unconstitutional. The difficulty in determining whether prospective or retroactive application is appropriate was highlighted in the cases that followed this Court's decision in *Crego v Coleman*, 201 Mich App 443; 506 NW2d 568 (1993) (*Crego I*). *Crego I* held that § 3 of the Paternity Act, MCL 722.713, specifically provided that the performance of a settlement agreement after approval by the court barred " 'other remedies of the mother or child for the support and education of the child' " unless the parties provided for modification in the language of the settlement agreement. Two years later, MCL 722.713 was declared

unconstitutional because it violated equal protection to the extent that it afforded the parties to a paternity action greater settlement rights than were afforded parties to a divorce action with respect to the child support issue, and to the extent that it rendered child support awards under the Paternity Act unmodifiable while child support awards under the divorce statutes remained modifiable. *Dones v Thomas,* 210 Mich App 674, 679; 534 NW2d 221 (1995). As a result, the Legislature repealed this statute and the plaintiff in *Crego I* refiled her suit seeking modification of the settlement agreement she had entered into pursuant to § 3. *Sturak, supra* at 556-557. The circuit court granted the plaintiff's motion.

The defendant's appeal was decided by *Crego v Coleman,* 226 Mich App 815, 821; 573 NW2d 291 (1997) (*Crego II*), vacated 226 Mich App 815 (1997), in which this Court stated that, were it not compelled by MCR 7.215(J)(1) to reverse, it would affirm and hold that MCL 722.713 was unconstitutional as violative of the equal protection guarantees of the United States and Michigan constitutions. This Court further stated that it would give its holding only limited retroactive effect in that it would permit the defendant and other similarly situated putative fathers to contest the issue of paternity.

A conflict panel was convened to resolve the disagreement between the *Crego I* and *Crego II* decision, and, affirming the holdings of *Dones* and *Crego II,* the panel determined MCL 722.713 to be unconstitutional. *Crego v Coleman,* 232 Mich App 284, 288; 591 NW2d 277 (1998) (*Crego III*). Although the majority opinion did not address the issue of retroactivity, Chief Judge WHITBECK did in his dissent. Chief Judge WHITBECK noted that since the Paternity Act was enacted, literally

thousands of cases were brought under its provisions and that a fair number of those cases resulted in unmodifiable child support agreements under § 3. *Id.* at 328. He opined that the effect of the majority's decision was to allow these agreements to be reopened, which could lead to the "clearing" of putative fathers of paternity by the use of modern DNA testing, and expressed his concern that a woman then might be required to make restitution of years of child support. *Id.* at 328-329.

In *Sturak, supra* at 552, the plaintiff filed a complaint in 1983 alleging that the defendant was the father of the minor child. The parties submitted to blood testing and subsequently entered into a settlement agreement, which was approved by the court in February 1985. *Id.* Years later, in the wake of this Court's decision in *Dones,* the plaintiff moved to set aside the settlement agreement and her motion was granted. *Sturak, supra* at 552. Following the defendant's failure to submit to new blood tests, a default judgment was entered and the court ordered the defendant to pay $93 a week in child support without credit for the money he paid pursuant to the terms of the 1985 settlement agreement. *Id.* at 553.

Thus, the issue in *Sturak* was whether the holding in *Crego III* should be applied retroactively. The Court reviewed Chief Judge WHITBECK's comments in *Crego III* and stated that "a retroactive application of the *Crego III* decision would not necessarily facilitate any of these imagined developments." *Sturak, supra* at 564. However, because the minor child's right to and need for support was primarily at issue and because complete retroactive application of *Crego III* to every nonmodifiable § 3 support agreement entered since the statute's enactment in 1956 would likely adversely affect the administration of justice, the Court limited the retroactive application of

*Crego III* to "settlement agreements entered before the Legislature's repeal of § 3, effective June 1, 1997, the subjects of which have not yet reached the age at which their right to parental support terminates."[3] *Sturak, supra* at 564.

Subsequently, our Supreme Court concluded that the statute did not violate equal protection guarantees, but did not address whether its decision should be applied retroactively. *Crego v Coleman,* 463 Mich 248, 252; 615 NW2d 218 (2000) (*Crego IV*). This issue was decided a few years later in *Hall v Novik,* 256 Mich App 387; 663 NW2d 522 (2003). As an initial matter, the *Hall* Court concluded that *Crego IV* did announce a new rule of law because it overturned *Dones, supra,* and the decisions that relied on that precedent. *Hall, supra* at 395. In concluding that prospective application only was appropriate, this Court relied heavily on the reasoning in *Riley* a factually similar case where the issue was whether a prior Supreme Court decision, *Gusler v Fairview Tubular Products,* 412 Mich 270; 315 NW2d 388 (1981), should be applied retroactively to require recipients of worker's compensation benefits to repay excess sums received from their employers that had been calculated using an erroneous formula. Instead of analyzing the issue under the three-part test, the *Hall* Court stated:

> It would be as unfair here to require that Hall reimburse Novik for amounts paid in excess of those due under the original support order as it would have been in *Riley* to require the worker's compensation benefit recipients to make reimbursement to their employers. As has been

---

[3] Retroactive application of *Crego III* was further limited to "situations where the potential litigant is dissatisfied with the agreement's support provisions, has knowledge of the putative father's continued existence and location, and believes that seeking modification of the agreement would constitute a worthwhile endeavor." *Sturak, supra* at 564-565.

noted, "[r]equiring . . . a woman to make 'restitution' of
years of child support payments could impose a tremen-
dous hardship, literally to the point of bankruptcy." *Crego
III, supra* at 329 (WHITBECK, J., dissenting).

Further, the public policy of this state, as reflected by
statute, is that support payments once made for the care of
a child are not normally "subject to retroactive modifica-
tion." MCL 552.603(2). "[T]his provision normally oper-
ates to prevent a payer from retroactively decreasing
support payments that have already come due . . . ." *Har-
vey v Harvey*, 237 Mich App 432, 437-438; 603 NW2d 302
(1999). The purpose of this statute is that " '[t]he custodial
parent, who actually provides for the child's welfare,
should be able to rely on receiving the court-ordered
amount' " until a petition for reduction has been filed. *Id.*
at 438, quoting House Legislative Analysis, SB 318-320,
June 30, 1987. Similarly, consistent with this statutory
policy, a parent should be able to use court-ordered support
payments without fear that reimbursement will be later
required following a change in the law. [*Hall, supra* at
398-399.][4]

The Court realized that prospectively applying *Crego IV*
worked a hardship on the plaintiff, because she would
no longer be entitled to higher child support payments,
while simultaneously working a hardship on the defen-
dant because he had been erroneously required to pay
these higher amounts for a period. Yet, despite this
inherent measure of unfairness, the *Hall* Court recog-
nized that "any change of law presents a difficult

---

[4] Addressing the fact that it did not specifically utilize the three-part
test, the *Hall* Court stated:

To the extent that analysis under the three-part test is re-
quired, we note that *Riley, supra* at 646, upon which we primarily
rely, did consider that test and concluded that prospective appli-
cation of the new rule at issue was appropriate. For the same
reasons in this factually similar case, we would reach that same
conclusion if we were to apply the three-part test. [*Hall, supra* at
397 n 8.]

situation and the job of the court is to determine the issue of prospective or retroactive application in a manner that best accommodates the interests of all those affected by it." *Id.* at 399.

### III. RETROACTIVE APPLICATION OF *DEROSE*

Turning to the case before us, we find that the *DeRose* decision clearly established a new principle of law by addressing for the first time the constitutionality of MCL 722.27b and declaring the statute unconstitutional. See *Hall, supra* at 394-395; *Sturak, supra* at 561-562. We also find that the purpose of the *DeRose* decision would be best served by giving it full retroactive application. There is no doubt that grandparents play an important role in a child's life. But grandparents do not have a fundamental right to make decisions for their grandchild. Additionally, despite plaintiffs' reliance on the statute, and that of others similarly situated, prospective application only of *DeRose* would fail to give this statement its proper import. It was precisely "the lack of any standards in the Michigan statute beyond 'the best interests of the child,' and specifically the failure of the statute to afford any deference to the custodial parent's decision" that was fatal to the viability of MCL 722.27b. *DeRose,* 249 Mich App 394-395.

Moreover, unlike the child support and restitution concerns in the above cases, no such financial concerns are involved here. The orders entered pursuant to MCL 722.27b involve only grandparents' visitation rights. In light of our Supreme Court's affirmance of the *DeRose* decision, we do not face the potential of creating additional litigation that was present in the *Pohutski, Hall,* and *Sturak* cases. Therefore, the effect of *DeRose* being given full retroactive application is only to terminate those visitation rights. And so we hold that the *DeRose*

decision should be applied retroactively. Accordingly, we vacate the trial court's January 10, 2001, order granting plaintiffs grandparenting time as it is void ab initio.[5]

As the *DeRose* Court recognized, it is presumably possible for a constitutional grandparent visitation statute to be written. In the event that the Legislature addresses the constitutional deficiencies identified in *DeRose*, plaintiffs and others similarly situated would be entitled to petition the court anew for visitation rights. However, in the meantime, we hold that all orders based on and entered since the enactment of MCL 722.27b, effective December 17, 1982, are void ab initio and thus, are no longer to be given legal effect.

### IV. THE CONTEMPT ORDER AND THE PRECEDENTIAL EFFECT OF *DEROSE*

Defendant also argues that because the order granting plaintiffs grandparenting time is unenforceable, the trial court erred in denying his motion to vacate the April 22, 2002, contempt judgment, which stemmed from his violation of the grandparenting time order. The trial court's decision on a motion to set aside a prior judgment is discretionary, and will not be reversed absent an abuse of discretion. *Heugel v Heugel,* 237 Mich App 471, 478; 603 NW2d 121 (1999). The trial court's issuance of a contempt order is also reviewed for an abuse of discretion, but to the extent that our review requires us to address questions of law, our review is de novo. *In re Contempt of Dudzinski,* 257 Mich App 96, 99; 667 NW2d 68 (2003).

A trial court is empowered with the inherent right to punish all contempts of court. MCL 600.1701 *et seq.*; *In*

---

[5] Because the trial court lacked the authority to grant relief to plaintiffs, a remand is unnecessary. *DeRose,* 249 Mich App 395.

*re Contempt of United Stationers Supply Co,* 239 Mich
App 496, 499; 608 NW2d 105 (2000). There is no dispute
that defendant violated the court's January 10, 2001,
order when he moved with his minor children to Colo-
rado. Defendant's argument rests solely on the conten-
tion that he should not have been held in contempt for
failing to comply with an order that was *subsequently*
determined to be of no legal effect. However, an order of
the court must be complied with at the time it is entered
even if the order is clearly incorrect, *Kirby v Michigan
High School Athletic Ass'n,* 459 Mich 23, 40; 585 NW2d
290 (1998), or it is set aside on appeal, *United States v
United Mine Workers of America,* 330 US 258, 294; 67 S
Ct 677; 91 L Ed 884 (1947). As this Court stated in *In re
Contempt of Dudzinski, supra* at 111, "A person may not
disregard a court order simply on the basis of his
subjective view that the order is wrong or will be
declared invalid on appeal."

Thus, it would appear that defendant was bound to
comply with the court's grandparenting time order,
notwithstanding the fact that MCL 722.27b was subse-
quently declared unconstitutional. *United Mine Work-
ers, supra* at 293. But the above-cited rules only apply to
"an order issued by a court *with jurisdiction over the
subject matter* and person . . . ." *Id.* On March 28, 2002,
a show cause hearing was held in regard to defendant's
apparent violation of the court's January 10, 2001,
order. Defendant argued that he should not be held in
contempt because the court lacked subject-matter juris-
diction over the issue pursuant to this Court's decision
in *DeRose.* Defendant asserted that MCR 7.215(C)(2)
provided that *DeRose* should be given immediate pre-
cedential effect despite the fact that an appeal was
pending in the Supreme Court.

MCR 7.215(C)(2) states:

> A published opinion of the Court of Appeals has prece-
> dential effect under the rule of stare decisis. The filing of an
> application for leave to appeal to the Supreme Court or a
> Supreme Court order granting leave to appeal does not
> diminish the precedential effect of a published opinion of
> the Court of Appeals.

The trial court disagreed with defendant's assertion
because it believed that MCR 7.215(C)(2) had to be read
in conjunction with MCR 7.215(F)(1)(a), which states
that "the Court of Appeals judgment is effective after
the expiration of the time for filing an application for
leave to appeal to the Supreme Court, or, if such an
application is filed, after the disposition of the case by
the Supreme Court." Additionally, MCR 7.215(E)(1)
provides that when the Court of Appeals disposes of an
appeal, its opinion is its judgment. Therefore, the trial
court declined to give *DeRose* precedential effect be-
cause it concluded that our opinion was not a final
judgment.

However, the court's reliance on MCR 7.215(F)(1)(a)
is misplaced. This court rule pertains to the timing of
when our judgment becomes final in regards to the
parties to the appeal and *its* enforceability with respect
to the trial court that presided over the case. Under this
court rule, a timely application for leave to appeal to the
Supreme Court operates as a stay of the Court of
Appeals judgment regarding its enforcement by the
prevailing party to that action. See *In re JK*, 468 Mich
202, 217; 661 NW2d 216 (2003). In contrast, the plain
language of MCR 7.215(C)(2) provides that neither the
filing of an application for leave to appeal to the
Supreme Court nor an order granting such leave dimin-
ishes the precedential effect of a published opinion of
the Court of Appeals. Where the language of the court
rule is clear, we presume the drafters intended the
meaning plainly expressed. *Hinkle v Wayne Co Clerk*,

467 Mich 337, 340; 654 NW2d 315 (2002). Therefore, the trial court erred in determining that the *DeRose* decision did not need to be given precedential effect. To conclude otherwise would render the court rule nugatory; such a construction is to be avoided. *Jerico Constr, Inc v Quadrants, Inc,* 257 Mich App 22, 32; 666 NW2d 310 (2003).

Our interpretation is supported by the effective change caused by the addition of MCR 7.215(C)(2). The effect of this Court's opinions before the amendment was set forth in *People v Phillips,* 416 Mich 63; 330 NW2d 366 (1982). In that case, the prosecutor argued that the Court of Appeals decision in *People v Dunigan,* 96 Mich App 577; 293 NW2d 637 (1980), was binding precedent until the Supreme Court reversed that decision[6] seven months later. The Court stated:

> The prosecutor apparently misconceives the precedential status of a Court of Appeals decision in which leave to appeal has been granted by this Court. A timely application for leave to appeal to this Court from a decision of the Court of Appeals effectively stays the Court of Appeals decision as a final adjudication, see *People v George,* 399 Mich 638; 250 NW2d 491 (1977), and denies it precedential force until denial of the application for leave to appeal in this Court or some other disposition of the case is announced. An *opinion* of the Court of Appeals is not its judgment. Its decision and judgment are made when the clerk of the Court of Appeals issues the Court's judgment order *and* sends notice thereof to counsel for each party under GCR 1963, 821.2.
>
> It is only after application for leave to appeal to this Court is denied, or dispositive action is taken effectively approving the Court of Appeals decision, that it becomes a "final adjudication" of that Court.

---

[6] 409 Mich 765; 298 NW2d 430 (1980).

> In *Dunigan,* our order granting the defendant's timely
> application for leave to appeal, followed by our judgment
> reversing the Court of Appeals decision, precluded the
> Court of Appeals opinion from ever having precedential
> effect. [*Phillips, supra* at 74-75 (emphasis in original).]

In 1987, MCR 7.215(C)(2) was added, and the Staff
Comment to the 1987 amendment explicitly stated that
the effect of the amendment was "a change from the
prior rule as stated in [*Phillips, supra*]." Construing
MCR 7.215(C)(2) in *Straman v Lewis,* 220 Mich App
448, 451; 559 NW2d 405 (1996), this Court recognized
this change, stating, "Thus, the publication of an opin-
ion of this Court creates binding precedent statewide,
and, contrary to past practice as reflected by [*Phillips,
supra*], the opinion remains binding 'until such time as
a decision of the Supreme Court enters altering the
lower court decision or questioning its rationale.' "
Quoting 6 Martin, Dean & Webster, Michigan Court
Rules Practice (3d ed), p 315.

In this case, defendant violated the January 10, 2001,
grandparenting time order in October 2001. Three
months later, on January 25, 2002, this Court issued its
decision in *DeRose,* which had an immediate preceden-
tial effect. At the March 28, 2002, show cause hearing,
defendant made an oral motion for relief from the
grandparenting time order pursuant to MCR 2.612(C).
Defendant argued that the trial court lacked subject-
matter jurisdiction over the contempt proceedings be-
cause the Court of Appeals had declared the grandpar-
enting time statute unconstitutional. The court denied
defendant's motion and found him in contempt.[7] Giving
precedential effect to this Court's *De Rose* decision

---

[7] Two weeks before the show cause hearing, defendant filed a motion
for summary disposition in which he sought to vacate the grandparenting
time order based on this Court's *DeRose* decision. The hearing was held

required that the trial court grant defendant's motion and the court erred in failing to do so. Because the grandparenting time statute was declared unconstitutional before the contempt judgment was entered, the court did not have jurisdiction over the subject matter of the contempt judgment. Thus, we find that the trial court erred in denying defendant's subsequent motion to vacate the contempt judgment. *United Mine Workers, supra* at 293.[8]

Order granting grandparenting time vacated and order denying motion to vacate judgment of contempt reversed.

SAWYER, J., concurred.

BORRELLO, J. (*concurring*). I concur in the decision reached by the majority for the sole reason that we are bound by our Supreme Court's ruling in *DeRose v DeRose*, 469 Mich 320; 666 NW2d 636 (2003). However, I write separately because I find persuasive the reasoning of Justice KELLY in her dissent in *DeRose,* when she stated:

> Accordingly, when the Legislature enacted the grand-parent visitation statute, it saw fit to explicitly require that trial courts give deference to a fit parent's decisions regarding grandparent visitation. The majority's argument that the provisions requiring deference are inapplicable in the context of grandparent visitation are untenable. The Legislature resolved this issue by including grandparent visitation within the gamut of custody disputes. Therefore,

_____

in April 2002. The trial court rejected defendant's argument and refused to vacate either the grandparenting time order or the contempt judgment.

[8] We note that had the court found defendant in contempt *before* the *DeRose* decision was published, defendant would not be entitled to such relief. *In re Contempt of Dudzinski, supra* at 110.

because it is narrowly tailored to serve a compelling
governmental interest, the statute is constitutional. [*Id.* at
357.]

Justice KELLY was correct in stating that when our
Legislature drafted MCL 722.27b, it did so in a way that
passes constitutional muster. I would incorporate those
findings in her dissent and add to them the suggestion
that despite the holding in *DeRose*, the jurisprudence of
this state does not recognize a fundamental right to
parent.

The majority's opinion in *DeRose* is problematic
because much of the decision rested on the United
States Supreme Court's determination in *Troxel v
Granville*, 530 US 57; 120 S Ct 2054; 147 L Ed 2d 49
(2000), that there exists a "fundamental right" to
parent. However, recent decisions by our Supreme
Court and this Court are seemingly at odds with the
concept that there exists a "fundamental right" to
parent. A review of the cases addressing issues of a
"fundamental right" to parent shows that they rely
more on our Courts' enchantment with the phrase "the
sanctity of marriage" than on allowing a parent to
exercise this right, or even be heard so as to attain this
"fundamental right."

In *In re CAW*, 469 Mich 192; 665 NW2d 475 (2003),
Justice TAYLOR, writing for the majority, denied a puta-
tive father's right to intervene in a parental rights
termination proceeding. While the majority's decision
was predicated on several factors, Justice TAYLOR, in
contrasting his ruling to that of the dissent, stated:

> There is much that benefits society and, in particular,
> the children of our state, by a legal regime that presumes
> the legitimacy of children born during a marriage. It is
> likely that these values, rather than failure to consider the
> plight of putative fathers who wish to invade marriages to

assert paternity claims, motivated the drafters of the rules and statutes under consideration. [*Id.* at 199-200 (citation omitted)].

Such a basis for denying a putative father's right to intervene in an action wherein he was requesting the right to be a legally sanctioned parent is at odds with the *DeRose* finding that there exists a "fundamental right" to parent. Similarly, this Court in *Aichele v Hodge*, 259 Mich App 146; 673 NW2d 452 (2003), held:

> [W]hen a child is born during a marriage, a putative father can never successfully institute legal proceedings to be declared a parent. Because plaintiff cannot obtain a legal determination that he is the child's "parent," he does not have standing to seek custody of her under the Child Custody Act. [*Id.* at 162.]

Because the majority in these cases did not allow putative parents to intervene in cases that would allow them the opportunity to even prove their parentage, we cannot state that Michigan recognizes a "fundamental right" to parent. For these reasons, I concur in the result only.