*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF AGRICULTURE AND
RURAL DEVELOPMENT,

        Plaintiff-Appellee,

v

ZANTE, INC., doing business as MARLENA'S
BISTRO & PIZZERIA,

        Defendant-Appellant.

FOR PUBLICATION
September 21, 2023
9:10 a.m.

No. 363515
Ingham Circuit Court
LC No. 2021-000113-CZ

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

GLEICHER, C.J.

During the COVID-19 pandemic, the Michigan Department of Agriculture and Rural Development (MDARD) suspended the food establishment license for Marlena's Bistro and Pizzeria. Marlena Pavlos-Hackney, the restaurant's sole owner, deliberately defied the license suspension, keeping the establishment open for business. MDARD filed this lawsuit seeking a court order enjoining the restaurant's operation. The circuit court entered a temporary restraining order (TRO), which Pavlos-Hackney also defied. The circuit court held her in contempt and converted the TRO into a preliminary injunction. Pavlos-Hackney kept the restaurant open and the circuit court entered a second contempt judgment and a permanent injunction.

This Court affirmed the contempt judgments in *In re Contempt of Pavlos-Hackney*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 357407) (*Pavlos-Hackney I*). The circuit court subsequently granted summary disposition to MDARD and denied Pavlos-Hackney's motion for a declaratory judgment.

Pavlos-Hackney appeals, offering a smorgasbord of challenges to the license suspension and the contempt judgments. None of Pavlos-Hackney's arguments have merit, and we affirm.

-1-

## I. BACKGROUND

The 2022 opinion in *Pavlos-Hackney I* describes the facts leading to the contempt citations in considerable detail, and we need not revisit most of them here. Only a couple of facts require mention.

In November 2020, the Director of the Michigan Department of Health and Human Services (MDHHS) issued an order under the authority granted by MCL 333.2253 of the Public Health Code, MCL 333.1101 *et seq*., prohibiting indoor dining. The Food Law of 2000, MCL 289.1101 *et seq*., mandates that restaurants maintain a valid food license to operate, MCL 289.4101, and empowers local health departments to inspect restaurants for compliance with public health rules and regulations. MCL 289.3105. MDARD administers the Food Law.

Pavlos-Hackney disagreed with the MDHHS order prohibiting indoor dining and purposefully flouted it. In December 2020, the Allegan County Health Department warned Pavlos-Hackney that her restaurant was not in compliance with the MDHHS order, but Pavlos-Hackney disregarded the warning. Later that month MDARD ordered Marlena's to close. Pavlos-Hackney ignored this order and the restaurant remained open. In January 2021, MDARD summarily suspended the food license for Marlena's Bistro and Pizzeria under the authority of MCL 289.4125(4) of the Food Law. After a hearing, an administrative law judge continued the suspension in a February 2021 order. Pavlos-Hackney did not appeal that order. MDARD filed this injunctive action two weeks later seeking to prevent Pavlos-Hackney from operating her restaurant without a license.[1]

The circuit court issued a TRO shutting down the restaurant, and Pavlos-Hackney was personally served with the order. Pavlos-Hackney violated the TRO, keeping the restaurant open. MDARD sought a contempt sanction and requested conversion of the TRO into a preliminary injunction. The court held Pavlos-Hackney in contempt, ordered her to pay $7,500, and issued a preliminary injunction. The court's order specifically warned Pavlos-Hackney that if she continued to operate the restaurant without a license, she would be arrested and incarcerated to compel her compliance. Pavlos-Hackney scorned that order, too, and was arrested. The court responded with a second contempt judgment, a second fine of $7,500, and a permanent injunction. A few days later, Pavlos-Hackney paid the $15,000 and was released from jail.

Pavlos-Hackney moved for relief from judgement in the circuit court, seeking to set aside the contempt judgments and requesting a refund of the $15,000 plus an award of costs, fees, and compensatory damages. The circuit court denied the motion but permitted Pavlos-Hackney to request a hearing that would allow her to address her ability to pay. Instead, Pavlos-Hackney filed an appeal in this Court, which affirmed the contempt judgments but remanded to the circuit court with instructions regarding refashioning the second fine "to be civil in nature." *Pavlos-Hackney I*, ___ Mich App at ___, slip op at 19.

---

[1] MDARD sued Zante, Inc., the corporation that owns Marlena's Bistro & Pizzeria, and the pizzeria. Because Pavlos-Hackney is the sole owner of both enterprises, we refer to her as the defendant.

Meanwhile, MDARD sought summary disposition in the circuit court case, and Pavlos-Hackney moved for "declaratory judgment, to dismiss, vacate, void and set aside case/conviction, and award damages." The circuit court granted MDARD's motion and denied Pavlos-Hackney's motion for declaratory and other relief.

## II. ANALYSIS

Pavlos-Hackney's appellate arguments rest on the proposition that she should be relieved of the judgments of contempt and the order suspending her food license because the COVID-19-related executive orders issued by Governor Whitmer and the emergency order issued by the MDHHS in 2020 were unconstitutional. We need not address the Governor's executive orders because they have nothing to do with this case. The constitutionality of MCL 333.2253 is similarly irrelevant.[2]

Because she did not appeal the administrative order upholding the food license suspension, Pavlos-Hackney may not now relitigate that decision. The merits of the administrative proceedings and license suspension were not at issue in the circuit court; the question before that court was whether an injunction closing the restaurant was warranted. Pavlos-Hackney tries mightily to convince us otherwise, citing two sections of the Administrative Procedures Act of 1969 (APA), MCL 24.201 *et seq*., neither of which apply.

Pavlos-Hackney first points to MCL 24.264, which provides:

> Unless an exclusive procedure or remedy is provided by a statute governing the agency, *the validity or applicability of a rule*, including the failure of an agency to accurately assess the impact of the rule on businesses, including small businesses, in its regulatory impact statement, may be determined *in an action for declaratory judgment* if the court finds that the rule or its threatened application interferes with or impairs, or imminently threatens to interfere with or impair, the legal rights or privileges of the plaintiff. *The action shall be filed in the circuit court* of the county where the plaintiff resides or has his or her principal place of business in this state or in the circuit court for Ingham county. The agency shall be made a party to the action. *An action for declaratory judgment may not be commenced under this section unless the plaintiff has first requested the agency for a declaratory ruling and the agency has denied the request or failed to act upon it expeditiously*. This section shall not be construed to prohibit the determination of the validity or applicability of the rule in any other action or proceeding in which its invalidity or inapplicability is asserted. [Emphasis added.]

First and foremost, this provision applies to challenges related to the validity or applicability of an *administrative rule*, and not to the constitutionality of a statute such as MCL 333.2253. Second,

---

[2] In an opinion issued on June 29, 2023, a two-judge majority of this Court declared MCL 333.2253 an unconstitutional delegation of legislative authority. *T & V Assoc, Inc v Dir of Health & Human Servs*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 361727), app for lv pending. That decision postdates the events underlying this case by more than two years.

even if we were to conflate administrative rules with statutes, Pavlos-Hackney never requested a declaratory ruling from MDARD regarding the constitutionality of MCL 333.2253 or of the MDHHS order. Moreover, Pavlos-Hackney did not bring a separate *action* in the circuit court seeking a declaratory ruling. Instead, she raised her constitutional arguments only during the permanent injunction and contempt proceedings. "As this Court has repeatedly recognized, when an administrative scheme of relief exists an individual must exhaust those remedies before a circuit court has jurisdiction." *In re Harper*, 302 Mich App 349, 356; 839 NW2d 44 (2013).

Pavlos-Hackney next invokes MCL 24.306, which provides in relevant part:

> (1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

> (a) In violation of the constitution or a statute.

This statute is also located within the APA, and relates to the power of a court reviewing "a decision or order in a contested case" before an agency after the exhaustion of "all administrative remedies available within an agency." MCL 24.301. It applies to appeals from an administrative ruling under the APA; it is not a "cut and paste" provision opening the door to collateral attacks on an agency's decisions pursued in violation of the APA. See *Womack-Scott v Dep't of Corr*, 246 Mich App 70, 80-81; 630 NW2d 650 (2001):

> To the extent that plaintiff suggests that she is entitled to file a separate cause of action in the circuit court to address the constitutional issue over which the administrative agency had no jurisdiction, we find her claim without merit. This Court has explained that when a constitutional issue is intermingled with issues properly before an administrative agency, exhaustion of administrative remedies is not excused:

>> [T]he exhaustion requirement is displaced only when there are no issues in controversy other than the constitutional challenge. The mere presence of a constitutional issue is not the decisive factor in avoiding the exhaustion requirement. If there are factual issues for the agency to resolve, the presence of a constitutional issue, or the presence of an argument couched in constitutional terms, does not excuse the exhaustion requirement even if the administrative agency would not be able to provide all the relief requested. [*Mich Supervisors Union OPEIU Local 512 v State of Michigan*, 209 Mich App 573, 578; 531 NW2d 790 (citations omitted).]

> Constitutional issues not within the administrative agency's jurisdiction can be raised in the circuit court through the review procedure in the APA; no separate action is contemplated or allowed.

Here, the circuit court did not consider a petition seeking review of an agency's decision; it assessed the need for an injunction and whether to sanction Pavlos-Hackney for her repeated

violations of court orders. Pavlos-Hackney's failure to pursue her administrative remedies foreclosed the circuit court's review of the constitutionality of an agency's actions.

Pavlos-Hackney's challenge to the validity of the contempt judgments is also out of bounds. "[T]he longstanding rule is that 'a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy.' " *In re JCB*, 336 Mich App 736, 747; 971 NW2d 705 (2021), quoting *United States v Rylander*, 460 US 752, 757; 103 S Ct 1548; 75 L Ed 2d 521 (1983). " 'A person may not disregard a court order simply on the basis of his subjective view that the order is wrong or will be declared invalid on appeal.' " *Johnson v White*, 261 Mich App 332, 346; 682 NW2d 505 (2004), quoting *In re Contempt of Dudzinski*, 257 Mich App 96, 111; 667 NW2d 68 (2003).

Pavlos-Hackney's efforts to avoid these holdings are futile. She contends that *Dudzinski* involved criminal rather than civil contempt, thereby distinguishing it from her case. But our Supreme Court has reiterated that the principles enunciated in *Dudzinski* apply to civil contempt. "A party must obey an order entered by a court with proper jurisdiction, *even if the order is clearly incorrect*, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998) (emphasis added). *Kirby* was decided in the context of civil contempt five years before this Court decided *Dudzinski*. See *id*. at 32 n 8.

Pavlos-Hackney next contends that *Dudzinski* relied on federal precedent that was mere dicta, but does not explain why that undercuts the legitimacy of the case's holding. *Dudzinski*'s discussion of federal precedent reflects that the principle that a court order must be obeyed is of long standing. See, e.g., *Kirby*, 459 Mich at 40; *In re Hague*, 412 Mich 532, 544; 315 NW2d 524 (1982) (stating that "[a]n order entered by a court with proper jurisdiction must be obeyed even if the order is clearly incorrect"). Nor does this Court's opinion in *Johnson*, 261 Mich App at 346, provide Pavlos-Hackney with a life raft.

In *Johnson*, 261 Mich App at 334, the defendant-father had violated the trial court's "order granting plaintiffs grandparenting time" by moving his children to Colorado in January 2001, and the trial court entered a contempt judgment against him. He later moved to vacate the contempt judgment based on this Court's decision in *DeRose v DeRose*, 249 Mich App 388; 643 NW2d 259 (2002), which held the grandparent visitation statute unconstitutional. The defendant argued "that because the grandparenting time order was void, the contempt order stemming from its violation was also void." *Johnson*, 261 Mich App at 334. The trial court disagreed, reasoning that *DeRose* "had no precedential value because, at the time, leave was pending before the Michigan Supreme Court and, therefore, the decision was not final." *Id*. On appeal, the defendant argued that the trial court should have vacated its contempt order because the grandparenting-time order was unenforceable. *Id*. at 345. This Court agreed. *Id*. at 350.

We discussed and reaffirmed in *Johnson* the general principle that a party is required to obey court orders regardless of their validity. *Id*. at 345-346. However, we noted that this principle applied only when a court had proper jurisdiction over a party. *Id*. at 346. In reversing the trial court's denial of the defendant's motion to vacate the judgment of contempt, this Court reasoned:

In this case, defendant violated the January 10, 2001, grandparenting time order in October 2001. Three months later, on January 25, 2002, this Court issued its decision in *DeRose*, which had an immediate precedential effect. At the March 28, 2002, show cause hearing, defendant made an oral motion for relief from the grandparenting time order pursuant to MCR 2.612(C). Defendant argued that the trial court lacked subject-matter jurisdiction over the contempt proceedings because the Court of Appeals had declared the grandparenting time statute unconstitutional. The court denied defendant's motion and found him in contempt. Giving precedential effect to this Court's *DeRose* decision required that the trial court grant defendant's motion and the court erred in failing to do so. *Because the grandparenting time statute was declared unconstitutional before the contempt judgment was entered, the court did not have jurisdiction over the subject matter of the contempt judgment.* Thus, we find that the trial court erred in denying defendant's subsequent motion to vacate the contempt judgment. [*Johnson*, 261 Mich 349-350 (emphasis added).]

*Johnson* is a far narrower holding than Pavlos-Hackney claims. It does not stand for the proposition that courts lack contempt jurisdiction when an underlying law is *subsequently* declared unconstitutional. *Johnson*'s holding applies only if a statute has been declared to be unconstitutional *before* a contempt judgment is entered. That is not what happened here.

When the circuit court enjoined Pavlos-Hackney, found her in contempt, fined and jailed her, it did so in full conformity with then-existing law. Pavlos-Hackney had an opportunity to challenge the validity of the MDHHS order by pursuing an appeal from the administrative proceedings. She did not do so. Pavlos-Hackney elected to bypass the administrative and subsequent judicial processes that would have afforded her a full hearing on her constitutional claims. Instead she deliberately violated two lawful court orders. "[R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom." *Walker v City of Birmingham*, 388 US 307, 321; 87 S Ct 1824; 18 L Ed 2d 1210 (1967).

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Michelle M. Rick