585 N.W.2d 290 (1998)
459 Mich. 23
James E. KIRBY, as Next Friend of Michael Kirby, a Minor, and Lake Fenton Community School District, Plaintiffs-Appellees,
v.
MICHIGAN HIGH SCHOOL ATHLETIC ASSOCIATION, a Michigan Non-Profit corporation, Defendant-Appellant.
Docket Nos. 108997, 108998.
Supreme Court of Michigan.
November 3, 1998.
Collins, Blaha & Slatkin (by William J. Blaha and Lorie E. Steinhauer) Southfield, MI, for the plaintiffs.
Spender & Robb, P.C. (by Steven F. Spender and David A. Wecker) Flint, MI and Edmund J. Sikorski, Jr., Ann Arbor, MI, for the defendant.
PER CURIAM.
The circuit court intervened in the 1995 Michigan High School Athletic Association team wrestling tournament, ordering that wrestlers from Lake Fenton Community High School be allowed to participate. Later, the circuit court entered a second order, holding the MHSAA in contempt. The *291 Court of Appeals affirmed both orders. We reverse the judgment of the Court of Appeals and the orders of the circuit court.

I
In February 1995, the Michigan High School Athletic Association[1] conducted its annual team wrestling tournament. As in some other sports, the format called for a number of teams to wrestle in a district tournament, with the district winners advancing to a regional tournament. Regional winners continued to the state quarterfinals.
On Wednesday, February 15, 1995, the New Lothrop High School wrestling team competed against the team from Lake Fenton Community High School in a district semifinal match. New Lothrop won by a single point, allowing it to advance to a district final match that same evening against Bentley High School.
On the bus ride home, the Lake Fenton coach looked again at the weigh-in sheet, and discovered that one of the victorious New Lothrop wrestlers had violated the rules by wrestling in the wrong weight category.[2] The coach immediately telephoned the director of the district meet, but the director did not share the opinion that the wrestler was ineligible.
New Lothrop defeated Bentley in the district final, and thus prepared to advance to the regional tournament a week later, on Wednesday, February 22, 1995.
The Lake Fenton coach was correctthe New Lothrop wrestler had been ineligible. Pursuant to a rule in the MHSAA handbook, the penalty was that New Lothrop forfeited its district semifinal match against Lake Fenton. New Lothrop offered a written acknoweledgment and apology on the day after the meet, February 16, 1995.
That same day (February 16), Bill Bupp, the assistant director of the MHSAA, ruled that no team from the district would advance to the regional tournament, scheduled for Goodrich High School on Wednesday, February 22. Mr. Bupp relied on an MHSAA policy that a team that has been defeated in single-elimination tournament play cannot advance, even if the apparently victorious team later forfeits. In his written statement to the affected schools, Mr. Bupp characterized the rule as a "long-standing MHSAA policy which has been applied without exception...."
On Friday, February 17, 1995, Lake Fenton submitted a written request that New Lothrop's violation be treated as a forfeiture of only the single match won by the ineligible wrestler. Such an approach would make Lake Fenton the winner of the district semi-final match. In their letter, Lake Fenton's wrestling coach and athletic director said that they had discussed a plan to set up a match between Lake Fenton and Bentley in advance of the regional meet scheduled for Wednesday, February 22, 1995.
*292 MHSAA Executive Director John E. Roberts responded in writing later on February 17:
This responds to the letter faxed to this office this morning.
Yesterday I advised New Lothrop High School that there could be no further appeal on their part, and it obviously would not be appropriate to grant further appeal to other parties involved.
The MHSAA Handbook is clear (Regulation V, Section 4[B]) that use of ineligible players by a school shall require that team victories are forfeited, not just individual matches.
For important reasons that have led to the policy being applied uniformly in the past and that an exception in this case would prohibit our applying in the future, teams which are defeated in tournaments by an opponent which has allowed an ineligible athlete to participate are not advanced in that tournament. If this were not the case, we would see more schools fail to help one another avoid rules violations, that is, they would bring violations to [sic] attention of opponents only after being defeated by them.
In December of 1991 and January of 1992, the MHSAA Representative Council reviewed the long-standing policy of not advancing defeated teams and made no change in the policy. Staff does not have the authority to make one [sic] exception to policy that has been reviewed by Council and uniformly applied.
Plaintiff James E. Kirby, the father of one of the Lake Fenton wrestlers, filed a February 17, 1995 complaint against the MHSAA in circuit court. Mr. Kirby sought an injunctive order compelling the MHSAA to conduct a match between Lake Fenton and Bentley, with the winner advancing to the regional tournament.
On February 17, the circuit court ordered the MHSAA to show cause why a preliminary injunction should not be entered. The matter was set for hearing at 3:30 p.m. on Wednesday, February 22, 1995.
On February 22, the plaintiffs filed an amended complaint that added Lake Fenton Community School District as a party plaintiff.
The hearing began at 4:39 p.m. on February 22. At Goodrich High School, the regional tournament was slated to begin at 5:30 p.m. There would be only one semifinal match, between Brown City High School and Marlette High School. In the other bracket, Goodrich High School drew a bye, since there was no opponent from the district where the forfeiture had occurred. The finals were set for 7:00 p.m.
Testimony was taken from Mr. Kirby, Mr. Bupp, and Jerry L. Kramer, the assistant superintendent at Lake Fenton. Seeking admission to the regional tournament, the lawyers for Lake Fenton also produced a letter from a Darryl Laskey at Bentley High School, indicating that the Bentley wrestling team was not healthy enough to compete and that Lake Fenton could advance in its stead to the regional.
After hearing testimony and argument, the circuit court ruled that there was no formal MHSAA rule prohibiting Lake Fenton from advancing in this situation. Though the situation had been discussed in MHSAA memos and bulletins,[3] the court concluded that the Lake Fenton students would draw adverse lessons if the MHSAA and the other parties followed a course not set forth in the MHSAA's formal rules.[4]
*293 The circuit court's conclusion was that the athletes from Lake Fenton "can go wrestle." The proceedings concluded at 6:50 p.m., as the circuit court entered this handwritten order:
This matter having come up on Order to Show Cause, the Court having considered the pleadings, the evidence, and the arguments of counsel, and being fully advised,
IT IS ORDERED
1. Lake Fenton Community School may wrestle in the Regional Tournament at Goodrich High School.
2. Defendant shall do all things necessary and/or advisable to implement this Order.
In the meantime, the semifinal match between Brown City and Marlette had been concluded. Marlette High School won in a match that ended about 6:25 p.m. Tournament director Al Martus[5] determined that the finals would not begin early, but would start at 7:00 p.m., in accordance with the schedule that had been published for competitors and fans.
The regional finals between Marlette and Goodrich began about 7:02 p.m. and, following a takedown, the score in the first match was 2-0. When word came that the court had ruled in favor of Lake Fenton, the initial match was halted,[6] and the Lake Fenton wrestlers were weighed.
A number of conversations took place involving the plaintiffs counsel, Mr. Martus, Mr. Bupp, and Mr. Roberts. The eventual result was that Lake Fenton was not permitted to compete. This decision was made by Mr. Roberts and conveyed by Mr. Bupp. Persons connected with Lake Fenton protested, but Mr. Martus believed that, as tournament director, he was bound by the rulings from the MHSAA officials.
The regional final between Marlette and Goodrich then resumed and continued to completion, with Goodrich winning the opportunity to advance further in the tournament. Lake Fenton did not participate.
The MHSAA has sought in two principal ways to justify its decision to exclude Lake Fenton. First, it was proposed that the use of the word "may" in the circuit court's handwritten order was permissive, and meant that the MHSAA could decide whether to allow Lake Fenton to participate. Of course, in context, the word "may" meant no such thing.
Second, and more plausibly, the MHSAA took the position that it was no longer possible to comply with the court's order, since the regional semifinals, into which Lake Fenton had been granted admission, were concluded before the court ruled. When the court's order was presented, the finals were already under way.
Following these events, Mr. Kirby and Lake Fenton went back to circuit court, and obtained an order requiring the MHSAA to show cause why it should not be held in contempt. At a hearing on Monday, February 27, 1995, the plaintiffs also sought an order reorganizing the tournament so that Lake Fenton could yet participate.
The MHSAA presented the testimony of Mr. Bupp and one of the tournament referees, Jeffrey Pendergraff. Mr. Bupp talked *294 about the situation that tournament officials faced when presented with the circuit court order, and he characterized the fact that the finals had already begun as "a new piece of the puzzle that had not been considered by [the circuit] Court." Mr. Bupp also indicated the general approach that he took in dealing with this matter:
Well, in athletics you advanceor, you win, they move people forwardteams advance, individuals advance, when they win. And, we don't have provisions in a sport anywhere where people are inserted into tournaments at the various levels along the way.
After the plaintiffs offered testimony from Mr. Kramer,[7] the circuit court indicated that it was convinced that somebody had been "playing games with its order." However, the court declined to reorganize the tournament, noting that neither Marlette nor Goodrich was a party to the case and that the state quarterfinals were slated to begin four days later on Friday, March 3, 1995. The court adjourned the contempt proceedings until testimony could be taken from Mr. Martus.
On March 9, 1995, the circuit court heard testimony from Mr. Martus, who testified that he followed the direction of Mr. Bupp. The court also heard testimony from Kenneth Andrzejewski, the principal of Goodrich High School, and from Mr. Roberts, Executive Director of the MHSAA. Mr. Roberts took personal responsibility for the ruling, saying, "I don't believe my position gives me the authority to insert, impose a semi-final round after the finals had begun."
At the conclusion of the hearing, the circuit court held the MHSAA in contempt.[8] It fined the organization $250,[9] and directed that it pay several thousand dollars to reimburse the plaintiffs for costs and attorney fees incurred in the circuit court proceedings that occurred after February 22, 1995.
The MHSAA separately appealed the injunctive order and the contempt order. The Court of Appeals consolidated the appeals, and affirmed both orders.[10]
The MHSAA has applied to this Court, seeking leave to appeal.

II
As one would expect, issues arising from high school athletic competition have rarely reached this Court. Indeed, research reveals only one occasion upon which we have ruled on the application of an MHSAA rule. Cardinal Mooney High School v. Michigan High School Athletic Ass'n, 437 Mich. 75, 467 N.W.2d 21 (1991).[11] The underlying dispute in Cardinal Mooney concerned an MHSAA rule that limits athletic participation to high school students who have not reached the age of nineteen. A dispute arose when an emotionally troubled nineteen-year-old student, for whom counselors thought participation on the basketball team would be beneficial, sought permission to play. A temporary restraining order allowed him to play in several basketball games, but the circuit court ultimately ruled that the MHSAA's age-eligibility rule was validly applied to bar a student's participation.
The appellate controversy in Cardinal Mooney concerned another MHSAA rule that imposes penalties on a school that uses *295 an ineligible athlete under the temporary protection of an injunctive order if the MHSAA later prevails on the merits. This Court found that the MHSAA rule was "a valid restitutive provision" that was "reasonably designed to rectify the competitive inequities that would inevitably occur if schools were permitted without penalty to field ineligible athletes under the protection of a temporary restraining order, pending the outcome of an ultimately unsuccessful legal challenge to one or more eligibility rules." Id. at 80, 467 N.W.2d 21. A key portion of our analysis centered on "the fact that the member schools of the MHSAA have voluntarily agreed to submit to the MHSAA's regulations, including [the disputed rule], as a condition of their membership." We added that "compliance with MHSAA rules on the part of student athletes is an appropriate and justifiable condition of the privilege of participating in interscholastic athletics under the auspices of the MHSAA." Id. at 81, 467 N.W.2d 21.
In addition to the Cardinal Mooney decision that we reversed in 1991,[12] the Court of Appeals has also looked at MHSAA rules in Nichols v. Farmington Public Schools, 150 Mich.App. 705, 389 N.W.2d 480 (1986), and Berschback v. Grosse Pointe Public School Dist., 154 Mich.App. 102, 397 N.W.2d 234 (1986). In Nichols, the Court of Appeals upheld application of the MHSAA rule proscribing participation by nineteen-year-old students. The student in Nichols, with a severe hearing impairment, had been mainstreamed into regular classes a decade earlier, at a grade that was one level below the normal grade for students of his age. Berschback concerned two students who were challenging an MHSAA rule that imposes a one-semester period of ineligibility for certain students who transfer (the objective is to reduce the temptation to recruit athletes at the high school level). Again, the MHSAA rules were upheld.

III
In the present case, the Court of Appeals offered this explanation of its decision to affirm the circuit court on the merits:
Plaintiffs argued below that it was unreasonable for defendant to apply an unwritten rule forbidding Lake Fenton's wrestling team from advancing to the regional tournament when a conflicting written rule in defendant's Rule Handbook (Regulation V, Section 4[B]) impliedly permitted the team to advance. The trial court held that plaintiffs established a likelihood of success on the merits. We hold that the trial court did not clearly err in making this finding since we are not convinced that we would have reached a different decision. Even if plaintiffs had constructive notice of the non-advancement policy, it was unreasonable for defendant to expect plaintiffs to abide by this policy when defendant, the organization that promulgated the policy, was unable to produce it. This was especially true since Regulation V, Section 4(B) apparently contradicted the non-advancement policy.
Defendant also argues that the trial court clearly erred in finding that plaintiffs would suffer irreparable injury if it did not issue an injunction. We disagree. A review of the record before us leads us to conclude that the trial court correctly found that irreparable harm would result if the injunction was [sic] not granted.
There are several problems with this analysis. First, we perceive no contradiction between the nonadvancement policy and the cited provision in the MHSAA handbook.[13] Second, the testimony in this case indicates that the MHSAA policy prohibiting a defeated team from advancing in tournament play was not "an unwritten rule." Rather, it was a consistently applied policy, reaffirmation of which had been reported in the written bulletins *296 that the MHSAA circulates to member schools.[14] Third, and most important, the Court of Appeals analysis misapprehends the fundamental nature of the relationship between the MHSAA and its member schools these schools voluntarily cede to the MHSAA full authority to regulate interscholastic athletics.
Athletic competition takes place under a unique set of circumstances. Competitors seek to win in an artificial environment in which a "win" is defined under inherently arbitrary rules, applied by umpires, referees, and other game officials who are themselves a fundamental part of the athletic environment. Formal athletic competition also is typically governed by an external body that sets rules and governs the competition subject to the agreement of teams and competitors. The means and objectives of athletic competition do not always "make sense" in any external fashionrather, participants seek to better themselves through the discipline of striving for goals that exist within the specific rules of each sport.
Two high school students who wish to wrestle may do so in the park or in the back yard. They can wrestle for five minutes or for ten. They can wrestle for pride or for the right to advance to a match against the student who lives at the end of the block. They can wrestle by whatever rules, or lack of rules, they prefer.
Or these students can choose to join a high school wrestling team. In this instance, all the students and schools chose participation in the interscholastic wrestling program organized and directed by the Michigan High School Athletic Association. Neither students nor schools were compelled to submit to the governance of the MHSAA, yet all did so. As the record indicates, Lake Fenton and all other MHSAA member schools annually adopt a resolution establishing MHSAA membership, and accepting MHSAA governance of the athletic competitions in which the schools participate. The record reflects that Lake Fenton had adopted this resolution for the 1995 season:
The Board of Education ... adopts as its own the rules, regulations, and interpretations..., all as published in the current HANDBOOK, and qualifications as published in the BULLETIN as the governing code....
The plaintiffs wish to finely parse that statement, arguing that the nonadvancement policy is not found in the handbook, and its placement in the bulletin is inadequate because it is not a "qualification." Again, this misapprehends the nature of MHSAA governance. Schools agree, for the purpose of having orderly competition, to let the MHSAA set the rules and govern the tournaments.
The plaintiffs' complaint and amended complaint each alleges that the MHSAA rules "clearly do not address the situation" found in this case. On that basis, the plaintiffs believe that the MHSAA cannot rule as *297 it did. However, the schools have agreed that tournaments will be run by the MHSAA. Inevitably, this agreement empowers the MHSAA to deal reasonably with situations outside its rulebook as they arise.[15]
Here, the MHSAA nonadvancement rule has a rational policyit encourages coaches to point out eligibility problems immediately, rather than to wait until the end of a match when there would be no possibility for a substitution and the school that kept quiet would automatically advance. The MHSAA's handling of this matter also serves to maintain the integrity of the tournament process. Lake Fenton lost in the district semifinals to New Lothrop, which defeated Bentley in the district finals. When this matter came before the circuit court, Lake Fenton sought advancement to the regionals, though it had never competed against Bentley. At the hearing in circuit court, Lake Fenton tendered a letter in which Bentley offered to "lose" a hypothetical match against Lake Fenton, but MHSAA officials certainly have the right to insist that state championships be decided on the wrestling mat, not through correspondence.
Long before this controversy arose, Lake Fenton agreed that it would participate in MHSAA-sponsored wrestling competition, under the governance of the MHSAA. Such an agreement is analogous to the consent given by a party entering arbitration, who agrees in advance to be bound by any ruling that is within the scope of the arbitrator's authority, provided the ruling is not clearly violative of law.[16] Here, the MHSAA exercised its authority in the course of such governance,[17] and made a ruling that has no fundamental flaw. Hence, its decision should be upheld.
For these reasons, we set aside the injunctive order of the circuit court.

IV
The Court of Appeals also upheld the contempt citation against the MHSAA, saying:
We hold that a reasonable person would have believed that defendant's actions would be viewed by the court as contemptuous. Although the order was not perfectly drafted, its directive was clear: Defendant was to do everything necessary and/or advisable to permit Lake Fenton to participate in the Regional Tournament. Not only did defendant's rules permit it to stop meets that it had already commenced, defendant's rules required it to do so when a court issued an injunction ordering defendant to permit a team or student to participate in its tournament. Accordingly, the trial court's injunctive order was not so ambiguous to preclude it from holding defendant in contempt for violating that order.
Holding the MHSAA in contempt, the circuit court expressed considerable irritation over the manner in which its order was handled by the MHSAA. We understand the court's concern, since the order clearly provided that Lake Fenton could participate. The circuit court exercises the judicial power of the state of Michigan under Const. 1963, art. 6, § 1, and has broad jurisdiction under Const. 1963, art. 6, § 13. A party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date. In re Hague, 412 Mich. 532, 544-545, 315 N.W.2d 524 (1982).
Nevertheless, we find in this close case that the MHSAA was not guilty of contempt. The court's order directed that Lake Fenton be permitted to "wrestle in the Regional Tournament at Goodrich High *298 School," but the only rational interpretation of that order was that Lake Fenton be allowed to participate in the semifinal portion of the regional tournament (no one had ever argued that Lake Fenton should be allowed to skip all the way from the district semifinals to the regional finals). However, at the point when MHSAA officials were called upon to make their decision, the regional finals between Marlette and Goodrich had already begun, and there was a 2-0 score in the first match. Making the decision by telephone, Executive Director Roberts concluded correctly that it was not possible to grant participation at the semifinal level in a regional tournament where the finals had already begun.
Thus we also set aside the order holding the MHSAA in contempt.

V
For the reasons stated in this opinion, we reverse the judgment of the Court of Appeals and the orders of the circuit court. MCR 7.302(F)(1).
MALLETT, C.J., and BRICKLEY, MICHAEL F. CAVANAGH, BOYLE, WEAVER, MARILYN J. KELLY, and TAYLOR, JJ., concurred.
NOTES
[1] The MHSAA is an association that includes nearly every public and private high school in Michigan. At the time these events took place, the organization had a statutory basis. See M.C.L. § 380.1289(2); M.S.A. § 15.41289(2), as it read before the enactment of 1995 P.A. 289. See also M.C.L. § 380.1521; M.S.A. § 15.41521, repealed by 1995 P.A. 289.

Schools that wished to be MHSAA members during the 1994-95 school year were required to adopt this resolution:
The Board of Education/Governing Body hereby delegates to the Superintendent or his/ her designee(s) the responsibility for the supervision and control of said activities, and hereby accepts the Constitution and By-Laws of said association and adopts as its own the rules, regulations, and interpretations (as minimum standards), all as published in the current handbook and qualifications as published in the BULLETIN as the governing code under which the said school(s) shall conduct its program of interscholastic activities and agrees to primary enforcement of said rules, regulations, interpretations, and qualifications.
Stating this requirement more clearly, the MHSAA form for adoption of the resolution explained that each school that wished to participate in MHSAA tournaments "must join the MHSAA and agree to be bound by and enforce the MHSAA rules, regulations, and qualifications concerning eligibility and game rules."
[2] Bill Whorf, a 157.5-pound wrestler, won at the 185-pound level. The victory was set aside because a National Wrestling Federation rule, adopted by the MHSAA, prohibits a wrestler from competing that far above the weight at which he is certified to compete.
[3] The circuit court stated:

I'm not convinced that a rule does exist. There's memos, there are bulletins, which specifically address the situation of what happens whenwhat happens to the losing team when it's determined that a forfeit should have occurred.
The Defendant presents testimony of different school situations where that happened and how they handled it, and they relied on their bulletins and their memos. But, the question that came to my mind was if the situation had happened in the last couple of years, it should have been a red flag that a rule should have been created, which specifically addresses the issue, instead of relying on memo or bulletin.
[4] The circuit court stated:

But, the telling argument to me, is rule making. Mr. Kramer said we teach the kids to follow the rules, and now the rules are confused or don't exist and they're working against us. And I'm gonna say that's the irreparable harm. The harm is not whether they get to wrestle, the harm is the lesson in life taught to these kids. If there's one thing we see, it is that if we cannot follow rules in this society, we have chaos. And if our kids think the rules are chaotic and don't choose to follow them, if we teach them that, then God help us all. The irreparable harm is that kids can be taught not to follow the rules, the kids could be taught to disrespect the rules; that causes moral and ethical problems. And that's something we usually deal with in church, but I think courts have to deal with that also.
[5] Mr. Martus is athletic director at Goodrich High School. It is common for a host school's athletic director to serve as tournament director.
[6] An MHSAA rule provides:

In the interest of fairness to all participants, if an injunction or restraining order is served or presented at an MHSAA tournament site and such purports to require the eligibility of or participation by a student or team which a school and/or the MHSAA has ruled to be ineligible under MHSAA regulations, the on-site tournament manager is to suspend the entire competition (team competition) or events in which that student is intending to participate (individual competition).
[7] Mr. Kramer had started to drive home after the February 22 hearing, but decided to go to Goodrich High School to make sure everything was in order. He arrived sometime after 8:00 p.m., as the finals were under way, and apparently was helpful in defusing a situation involving unhappy parents and athletes from Lake Fenton.
[8] A court may punish as contempt a party's disobedience of a court order. M.C.L. § 600.1701(g); M.S.A. § 27A. 1701(g). The order of the circuit court specified that the MHSAA was held in civil contempt. Cf. In re Contempt of Dougherty, 429 Mich. 81, 90-97, 413 N.W.2d 392, 81 A.L.R.4th 971 (1987).
[9] This sum is the statutory maximum. M.C.L. § 600.1715(1); M.S.A. § 27A.17150).
[10] Unpublished opinion per curiam, issued November 26, 1996, reh. den. March 13, 1997 (Docket Nos. 183284, 187113).
[11] In Dep't of Civil Rights ex rel. Forton v. Waterford Twp. Dep't of Parks & Recreation, 425 Mich. 173, 387 N.W.2d 821 (1986), this Court considered whether a basketball program for elementary students could have separate gender-based leagues that played at different times of the year.
[12] Cardinal Mooney High School v. Michigan High School Athletic Ass'n, supra.
[13] This is § 4(B) of the MHSAA's Regulation V:

Accidental, intentional or other use of ineligible players by a junior high/middle school or senior high school shall require that team victories are forfeited to opponents; and any one or more of these additional actions may be taken: (1) that individual or team records and performances achieved during participation by such ineligibles be vacated or stricken; and (2) that team or individual awards earned by such ineligibles be returned to the MHSAA.
[14] The record contains this testimony from Mr. Bupp:

In the history of the Michigan High School Athletic Association, we have come across this issue of not advancing a team that has been defeated, and as a result of the action that's been taken by the Michigan High School Athletic Association Executive Director over several yearsand not exclusively Jack Roberts, but Gordon Norris before him, and Al Busch [sic: Bush] and Charlie Forsythe from the beginning.
The policy was reaffirmed in two meetings. One, in December of 1991, which would be recorded and reported in our bulletin, which is our House Organ, the publication that chronicles all of the official actions of our association. And again, in December of 1992or, January of 1992, where the same information was reviewed.
The memo that I have in front of me which summarizes that action, and is dated January 27, 1992. We have on occasions in 1991, we had a situation like this, involving Mary Wright [sic: Murray-Wright] girl's basketball team, which had vacated a regional championship, and no team was advanced to the quarter final.
We had this case in 1992 in team wrestling, when an opponent defeated by East Lansing High School did not advance, due to an improper entry.
And, most recently, in 1994, we had an icehockey tournament where an opponent defeated by Escanaba did not advance; Escanaba had had a violation of regulation in the fact that they had had too many games during the particular season....
[15] The circuit court was concerned that Lake Fenton's student athletes would draw from these events the unfortunate lesson that rules need not be followed. Obviously a situation like this offers the potential for many lessons. Another is that sometimes one must accept gracefully a seemingly unfair decision by a person with authority to make the decision.
[16] See, generally, MCR 3.602(J)-(K).
[17] The articles or by-laws that establish the MHSAA are not part of this record. However, as indicated earlier, the MHSAA is an association of Michigan high schools. Thus it is a creature of its members, with no independent authority over schools or students. The schools can and should exercise appropriate oversight of the MHSAA.