# STATE OF MICHIGAN

# COURT OF APPEALS

ROSE M. MARCHESE,

        Plaintiff-Appellant,

v

ROBERT L. MARCHESE,

        Defendant-Appellee.

UNPUBLISHED
June 22, 2017

Nos. 330925; 331560
Wayne Circuit Court
Family Division
LC No.  14-107033-DM

Before:  JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

In Docket No. 330925, plaintiff Rose M. Marchese appeals as of right the trial court's order awarding defendant Robert L. Marchese over $22,000 in attorney fees and costs incurred by defendant in addressing plaintiff's contempt of court for violation of the parties' divorce judgment.  In Docket No. 331560, plaintiff appeals by delayed leave granted the earlier order of the trial court that had held her in contempt of court for violating the judgment.  In the order granting plaintiff's application for delayed leave, this Court also consolidated the two appeals. *Marchese v Marchese*, unpublished order of the Court of Appeals, entered April 21, 2016 (Docket No. 331560).  Because there was no error in holding plaintiff in contempt of court and in awarding sanctions to defendant, we affirm.

## I. PROCEDURAL AND SUBSTANTIVE HISTORY

The parties were married on December 31, 1992.  Three children were born of the marriage.  On June 24, 2014, plaintiff filed for divorce.  On August 5, 2014, defendant filed a counterclaim for divorce.  In April 2015, the parties engaged in mediation and reached a settlement agreement on all matters.  A consent judgment of divorce that incorporated the terms and conditions of the settlement agreement was entered on June 12, 2015.  Pertinent to this appeal, the judgment of divorce provided in part:

> The cottage [in] . . . Holland, Michigan, is hereby awarded to Defendant husband free and clear of any claims of Plaintiff wife, however, this is subject to him immediately listing the cottage for sale and applying 100% of the proceeds towards paying down the existing outstanding income tax liabilities associated with the parties' previously filed joint tax returns. Upon listing the property[,] Defendant shall present proof thereof to Plaintiff that the property has been listed, and that all proceeds received from the sale thereof are going towards the

-1-

payment of the Internal Revenue Service and State of Michigan tax liabilities. Plaintiff shall turn over all keys to the cottage within seven (7) days of Judgment. Plaintiff does not have the right to use the cottage pending sale.[1]

Two of the parties' children were no longer minors, and the parties were awarded joint legal custody of their youngest child, with plaintiff being awarded primary physical custody of the child and defendant being awarded parenting time. Defendant was ordered to pay $3,896 in monthly child support. As relevant to this appeal, the divorce judgment provided that defendant shall have parenting time "[o]ne day during the week for a non-overnight during the school year[,]" and that "[d]uring the periods of time that school is not in session (summer, Easter and winter break, etc.), the one day a week can be an overnight." Defendant was also given parenting time every third weekend, along with alternating holidays and one-week periods during spring and summer school breaks. Further, the divorce judgment provided that defendant was entitled to "[s]uch other or additional parenting time as is agreed to by Defendant father and [the child]."

On June 29, 2015, defendant filed an emergency motion for an order to show cause why plaintiff should not be held in contempt for failure to abide by the terms of the consent divorce judgment. Defendant asserted that during the mediation, plaintiff had unsuccessfully attempted to withdraw from the agreement regarding the cottage. Defendant alleged that upon entry of the divorce judgment, he immediately listed the cottage for sale and that an offer of $239,910 for the property was received shortly thereafter. According to defendant, plaintiff went to the cottage on multiple occasions and attempted to interfere with the sale. Defendant further contended that plaintiff sent him an email on June 24, 2015, indicating that she would be "blocking the sale and not signing off on [her] title." Defendant additionally maintained that plaintiff was harassing the realtor handling the sale, along with the realtor's office, and that plaintiff had also contacted the realtor for the prospective purchaser, leaving two phone messages. In the two messages, plaintiff indicated that she owned the cottage, that she would not sign off on any sale, that she had a higher offer with more cash down, and that the sale simply would not happen. Finally, defendant asserted that plaintiff was preventing their minor son from having parenting time with defendant. Defendant attached a supporting memorandum and documentation to the motion.

---

[1] The judgment of divorce also provided that plaintiff was awarded $11,000 per month in spousal support for 132 months, which was based on defendant's annual income of $690,000 as a doctor and imputed annual income of $17,000 for plaintiff. Plaintiff was awarded the marital home in Grosse Pointe Park, and defendant retained his medical practice free and clear of all claims by plaintiff. Numerous items of personal property were divided by the parties. Plaintiff was awarded the current entire value of defendant's 403(b) retirement plan with Beaumont Hospital. Plaintiff apparently refused to sign the consent judgment of divorce, but it was signed by plaintiff's counsel, and the court entered the judgment notwithstanding plaintiff's refusal to execute it, given that the attorneys indicated that it accurately represented the mediated settlement agreement.

On June 29, 2015, the trial court entered an order to show cause why plaintiff should not be held in contempt of court for failing to abide by the consent judgment of divorce. Plaintiff was ordered to appear at a hearing on the matter on July 8, 2015. Plaintiff filed a response the day before the scheduled hearing, and the gist of her position was that plaintiff's mother had offered to purchase the cottage for more money than defendant could ever obtain on any other sale of the property. At the hearing on July 8th, plaintiff's counsel explained to the court that plaintiff had believed that her realtor had submitted an offer from plaintiff's mother to purchase the cottage, but found out later that the offer had not been made in writing. Plaintiff's attorney further stated that plaintiff now realized that the offer of $239,910 had been accepted and that a closing was scheduled for July 24, 2015. Counsel represented that plaintiff would not interfere with the sale. Counsel did indicate that plaintiff's only concern was the removal of her personal property from the cottage.[2] Although plaintiff was present at the hearing, her attorney challenged, and refused to waive, the sufficiency of the service of the show cause order on plaintiff. Plaintiff's counsel subsequently agreed to accept service of the show cause order on plaintiff's behalf, and the contempt proceeding was adjourned until July 27, 2015. The trial court did enter an order following the hearing, which provided that the closing on the cottage was to proceed on July 24, 2015, that plaintiff was not permitted to enter onto the premises under any circumstance, that plaintiff was to execute a document adjourning a land contract forfeiture action that had been initiated by persons who had sold the cottage to the parties years earlier, and that plaintiff could not contact, in any fashion, real estate agents or any third persons involved in the sale of the cottage.

On July 27, 2015, an evidentiary hearing was conducted on the order to show cause. Two witnesses testified – plaintiff and defendant.

*Defendant's Testimony and Evidence*

Defendant testified that he placed the cottage for sale as ordered in the divorce judgment and that within 24 hours he sold the property to a woman for $239,910; it was a cash offer. A purchase agreement was executed on June 19, 2015. Defendant testified that he used a realtor with Coldwell Banker (CB) to sell the cottage and that a YouTube video of the home had been produced by CB as part of the effort to sell the cottage. According to defendant, plaintiff placed comments on YouTube relative to the cottage, indicating that the cottage was not for sale, that the ad should be taken down, and that it was her cottage. Defendant testified that, after entry of the divorce judgment, plaintiff had been to the cottage, that she changed the cottage's locks, that she removed a lockbox, and that she had accessed the cottage with the parties' children, who informed defendant of this fact after first denying it to their father. Defendant claimed that

---

[2] The divorce judgment provided that "[t]he furniture, furnishings and contents in the marital home and cottage, including any items already removed by either party, shall be allocated between the parties by mutual agreement within 30 days from date of entry of Judgment." If the parties could not agree, the judgment called for binding arbitration. No agreement had been reached by the hearing date relative to the cottage, but 30 days had not yet elapsed since the divorce judgment had been entered.

plaintiff had been at and used the cottage on three occasions following the divorce judgment, including the Fourth of July weekend in 2015.

Defendant testified that the purchaser had moved into the cottage on July 24, 2015, although a closing on the sale had not been completed.[3] He indicated that the closing did not occur on July 24, 2015, as scheduled, because there were still issues with the land contract vendors and their forfeiture action. The land contract vendors were concerned about any potential responsibility or liability that they might incur in the messy situation. According to defendant, plaintiff contacted the land contract vendors, asking them if she could assume the land contract. Defendant testified that plaintiff's mother never actually made an offer for the cottage and that the only offer that was actually received came from the female purchaser.[4] He indicated that the parties had still not reached an agreement regarding the personal property contained in the cottage.

In lieu of taking testimony from the CB realtor who was handling the transaction on defendant's behalf and was available by phone to testify, plaintiff stipulated to the admission of emails sent by the realtor to defendant regarding various messages plaintiff had left for the realtor. In a June 24, 2015 morning email from the realtor to defendant, the realtor stated:

> Rose phoned me late last night and left a message, texted me, and emailed me 4 times. I am not communicating with her as you requested. Her text stated she has not agreed to sell it; I question if she understands the divorce judgment that you sent me.

In a June 24, 2015 early-afternoon email from the realtor to defendant, the realtor stated that "[t]here is a little red car there at [the cottage][;] I texted you a picture." This apparently was plaintiff's vehicle. In a June 24, 2015 evening email from the realtor to defendant, the realtor indicated that the situation with plaintiff was escalating and that plaintiff had been phoning and emailing the realtor throughout the day; the realtor was not answering or responding to plaintiff's communications. The email stated that plaintiff had threatened CB with legal action. The email also provided:

> Rose has phoned the buyer's Realtor . . . and left 2 nasty phone messages stating that she is the owner of the house, she has a higher offer with more cash down, she is not letting it go, buyer is not buying it, she paid so much for landscaping, no one is to bother her and her family this weekend, she is not signing off on title work, take the lockbox off the door[.]

---

[3] Defendant testified that the purchaser was allowed to move into the cottage despite the failure to close on the scheduled date, given that the purchaser had no other place to go or live.

[4] Defendant acknowledged that there had been some communications with plaintiff regarding the prospect of her mother purchasing the cottage, which defendant characterized as nonsense. He began to testify about learning later from his mother-in-law that she had "no idea" about the matter, but the testimony was stricken as hearsay.

Rose has tried contacting 2 other Realtors in my office about this too . . . .

The buyer's Realtor . . . is now concerned about the situation with her buyer; and what Rose will do to the cottage to sabotage the sale.

In an email from plaintiff to defendant dated June 24, 2015, plaintiff stated, "I'll see you in court. You did this intentionally [sold the cottage] to be mean. See you in court. I will be blocking the sale & not signing off my title."

With respect to the parties' minor child, who was 12 years old at the time of the hearing, defendant testified that he kept coming up with excuses not to see or visit defendant, which defendant attributed to plaintiff's misconduct. Defendant indicated that plaintiff would not give defendant permission to see the minor child on multiple occasions following entry of the divorce judgment. According to defendant, since entry of the judgment, plaintiff had not cooperated at all with defendant in scheduling parenting time. In a text message dated June 24, 2015, that was admitted into evidence, plaintiff informed defendant as follows:

You do not have my permission to see [the child] tomorrow either. Until my purchase is completed of my home [cottage.] See you in court[.]

*Plaintiff's Testimony and Evidence*

Plaintiff initially testified regarding ongoing counseling for the minor child, asserting that defendant had no intent in participating in the counseling.[5] Plaintiff testified that she had spoken to her mother about purchasing the cottage, but a written offer from her mother was never made. We note that plaintiff did not present any testimony by her mother supporting her claims. Plaintiff asserted that she had communicated with defendant about her mother's offer before the divorce was finalized and that he had demanded to see something in writing. Plaintiff testified that she then informed the CB realtor of her mother's desire to purchase the cottage, asking the realtor about reducing the offer to writing, but "that's when everyone stopped communicating." Plaintiff denied removing a lockbox from the cottage, but she admitted to changing the locks, claiming that she did not realize that there had been a sale of the property. She indicated that the parties had still not reached an agreement concerning division of the personal property in the cottage. With respect to the emails presented by defendant relative to her attempted communications with the realtors, plaintiff testified that her messages were very nice in tone. On cross-examination, when asked whether plaintiff interfered with the sale of the cottage, she replied, "Not in my mind. No, I was upset." When asked whether she communicated to the CB realtor after entry of the divorce judgment that the cottage belonged to her and was not for sale, plaintiff responded that she believed that it was her cottage and that there were ongoing

_____

[5] Plaintiff's cross-examination of defendant focused mainly on the child's counseling and the extent of defendant's involvement in the counseling. The relevancy of the counseling issue seemed tenuous at best.

negotiations about a sale to her mother or parents. She again claimed not to have known of the pending sale.[6]

With respect to the minor child, plaintiff denied interfering with defendant's parenting time, asserting that the child was "very mature and responsible on his choices." In regard to the particular date mentioned in defendant's motion to show cause relative to parenting time, plaintiff testified that the divorce judgment did not specifically provide for parenting time on that day and that the minor child had plans with friends.

*Trial Court's Ruling on Contempt*

The trial court ruled from the bench, finding plaintiff in contempt of court. The trial court found "without doubt," "without hesitation," and "without question" that plaintiff "gallantly attempted to undermine the real estate transaction." The court, reciting parts of defendant's testimony and the documentary evidence that he presented, all of which the court found to be credible, determined that plaintiff had attempted to interfere with the sale of the cottage and had violated the judgment of divorce as it pertained to the cottage. The trial court also found that plaintiff had "deliberately interfered" with the minor child's relationship with defendant and that plaintiff was in contempt of court for violating the divorce judgment's parenting time provisions. The court found that plaintiff's testimony was completely lacking in credibility. Following the hearing, the trial court entered an order which provided that plaintiff was in contempt of court for violating the judgment of divorce by interfering with the sale of the cottage and by interfering with defendant's parenting time. The order also scheduled an evidentiary hearing on a request by defendant for attorney fees, costs, and other potential sanctions.

*Evidentiary Hearing on Sanctions and the Court's Ruling*

On October 1, 2015, after the parties had earlier submitted memorandums and documentation regarding sanctions, the trial court held a hearing on attorney fees and costs, and the hearing was continued on November 4, 2015. Defendant submitted detailed billing invoices relative to the legal services provided by his attorney in regard to the contempt issue and filings. Defendant also submitted an affidavit by counsel in support of the reasonableness of the hourly rate charged and the time expended in the case, a survey of hourly billing rates, an invoice regarding the cost of replacing the cottage's locks after plaintiff had them changed, and a hefty bill related to serving plaintiff with process, which appeared to be difficult task. At the evidentiary hearing, defendant's counsel was placed under oath and testified in response to questioning by plaintiff's attorney and the trial court concerning his fees and the costs. Defendant's attorney testified that he had been practicing law for nearly 35 years, that his practice mainly concerned complex civil litigation, that five percent of his practice pertained to domestic relations cases, that the instant divorce litigation was complex, especially given the IRS

---

[6] We note that plaintiff's testimony was often non-responsive and evasive during cross-examination, and she was warned by the trial court to answer the questions.

liens and tax liabilities, and that he charged defendant $350 per hour for legal services, which counsel opined was reasonable given his experience and a Michigan State Bar survey.[7]

Plaintiff's attorney examined defense counsel, framing his questions in terms of the reasonableness of counsel's filings and actions, but which essentially attacked the court's contempt determination by questioning whether counsel had any reasonable factual or legal basis to pursue contempt claims against plaintiff in the first place. The trial court, adamantly insisting that the only issues concerned the reasonableness of counsel's hourly rate and the time expended in relation to the contempt matters, became increasingly frustrated with plaintiff's attorney, finally remarking:

> Okay, I'm taking judicial notice of the fact that I held a contempt hearing. I made a finding that she was in contempt, okay. Counsel, I really don't know what you're trying to do here.
>
> * * *
>
> [C]an you please confine your questions to the reasonableness of what he did without interjecting why he did it. If you want to suggest that there was no contempt, I've already made a finding that there was contempt. You seem to be unable to extricate those two principles.

Ruling from the bench, the trial court analyzed and applied the various "reasonableness" factors and awarded attorney fees and costs to defendant in the amounts requested, except as to $138 for replacing the cottage's lockbox, as defendant forgot to produce the receipt for it. In support of the award, the trial court cited MCR 3.206(C)(2)(b) (attorney fees and expenses incurred because of other party's refusal to comply with court order) and MCL 600.1721 (indemnification for actual losses or injuries caused by act of contempt of court). An order was entered on December 14, 2015, awarding defendant a grand total of $21,385 in attorney fees, encompassing fees related to contempt matters starting with the drafting of the motion to show cause on June 25, 2015, and ending with the time spent by counsel at the final hearing on sanctions on November 4, 2015. The order also awarded defendant $935 in service and process fees and $119 for the cost of replacing the cottage's locks. In sum, defendant was awarded $22,439 in sanctions. The order reflected that the attorney fees and costs were awarded pursuant to MCL 600.1721 and MCR 3.206(C)(2)(b). In Docket No. 330925, plaintiff first appealed the award of sanctions, and in Docket No. 331560, she subsequently appealed by delayed leave granted the earlier contempt ruling. As indicated above, this Court consolidated the appeals.

---

[7] We note that defendant's attorney did indicate that a closing on the cottage, pursuant to the June 2015 purchase agreement, finally did come to fruition.

## II. DOCKET NO. 331560 – CONTEMPT OF COURT

### A. STANDARDS OF REVIEW

"A trial court's findings in a contempt proceeding are reviewed for clear error and must be affirmed on appeal if there is competent evidence to support them." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009) (citations omitted). We are not permitted to weigh the evidence or assess the credibility of the witnesses in determining whether there was competent evidence to support the findings. *Id.* at 668-669. Clear error exists when the appellate court is left with the firm and definite conviction that a mistake was made. *Id.* at 669. The ultimate decision to issue a contempt order rests in the sound discretion of the trial court, which we review for an abuse of discretion. *Id.* at 671. "If the trial court's decision results in an outcome within the range of principled outcomes, it has not abused its discretion." *Id.* (citation omitted).

### B. CONTEMPT – GOVERNING PRINCIPLES

Contempt of court encompasses willful acts, omissions, or statements that tend to impair the authority or impede the functioning of a court. *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 673 NW2d 756 (2003); *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). "Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt." *Robertson*, 209 Mich App at 436. Pursuant to MCL 600.1701(g), a court is authorized to hold a party in contempt of court "for disobeying any lawful order, decree, or process of the court." "A party must obey an order entered by a court with proper jurisdiction, even if the order is clearly incorrect, or the party must face the risk of being held in contempt and possibly being ordered to comply with the order at a later date." *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998). The main purpose of a court's contempt authority is to sustain the power and preserve the effectiveness of the court. *Dudzinski*, 257 Mich App at 108. Punishment for contempt is proper when necessary to restore order in the courtroom or to ensure respect for the judicial process. *Id.* at 108-109. The *Dudzinski* panel further explained:

> The court's power to punish individuals for contempt is not without limitations. The contempt power is awesome and must be used with the utmost restraint. The courts have the responsibility to apply the contempt power judiciously and only when the contempt is clearly and unequivocally shown. The limits of the power to punish for contempt are the least possible power adequate to the end proposed. [*Id.* at 109 (citations and quotation marks omitted).]

Plaintiff's alleged actions in violating the judgment of divorce constituted criminal contempt of court, as opposed to civil contempt. See *In re Contempt of Rochlin*, 186 Mich App 639, 644-648; 465 NW2d 388 (1990) (criminal contempt concerns punishment for a completed act of disobedience, so as to vindicate the authority of the court, whereas civil contempt regards a coercive effort by a court to force a noncompliant party to do an act that was commanded by the court). "When any contempt is committed other than in the immediate view and presence of the court, the court may punish it . . . after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." MCL 600.1711(2); see also MCR

3.606(A).  Minimal due process safeguards must be employed when a contempt is committed outside a court's presence, including a right to a hearing and a reasonable opportunity to meet the allegations by defense of explanation.  *Robertson*, 209 Mich App at 438.  "The rules of evidence apply at the hearing on the contempt charges."  *In re Contempt of Calcutt*, 184 Mich App 749, 757; 458 NW2d 919 (1990), citing MRE 1101(a) and (b)(4).  Again, "proof of contempt must be clear and unequivocal."  *Robertson*, 209 Mich App at 439.

## C.  DISCUSSION

*Failure to Sign the Consent Judgment*

Plaintiff first argues that her failure to sign the consent judgment of divorce could not have formed the basis of contempt of court.  Plaintiff presents this argument acknowledging that the court did not find her in contempt on this ground, but nonetheless raises the issue because it was mentioned in defendant's motion to show cause.  Defendant's motion alleged that plaintiff refused to sign the divorce judgment and refused to appear at the hearing to enter the judgment, although it does not appear that defendant sought to hold her in contempt for these reasons.  Regardless, given that the trial court did not reach the issue, we see no reason to substantively address the matter.

*Interference with Parenting Time*

Plaintiff argues that defendant's show cause motion alleged a failure or refusal by plaintiff to allow parenting time relative to Wednesday, June 25, 2015; however, the divorce judgment did not specify any particular weekday that defendant was entitled to parenting time.  Accordingly, there was no violation of the divorce judgment with respect to parenting time and thus no basis for the trial court to hold plaintiff in contempt of court.[8]  In defendant's motion to show cause, after several paragraphs concerning the sale of the cottage, defendant alleged:

> In addition, [plaintiff] continues to prevent their twelve-year-old son . . . from having parenting time with [defendant]. [Plaintiff] is holding their son hostage to this ongoing situation. Shortly after midnight on June 24, 2015, [plaintiff] sent [defendant] a text message . . . .

Defendant then quoted the text message, which, as indicated earlier, stated, "You do not have my permission to see [the child] tomorrow either. Until my purchase is completed of my home [cottage.] See you in court[.]"  We view defendant's allegation as a claim that plaintiff was preventing defendant's exercise of parenting time on a continuing or ongoing basis, and the reference to a date was merely to identify when plaintiff sent the text message.  This is consistent with defendant's trial testimony.  Moreover, the text message made abundantly clear that

---

[8] At the evidentiary hearing on sanctions, plaintiff's counsel spent considerable time examining defendant's attorney on why it was reasonable to claim contempt based on a purported parenting time violation when the divorce judgment did not specify that defendant had parenting time on the date at issue.

plaintiff had no intention to permit defendant to have parenting time with the minor child *at any time* unless plaintiff or her mother purchased the cottage. As such, plaintiff's conduct directly violated the divorce judgment awarding defendant parenting time. Although plaintiff testified that she was not interfering with defendant's parenting time and that the child was independently making choices regarding time spent or not spent with his father, the trial court found that she lacked credibility. And we cannot disturb the court's assessment of plaintiff's credibility. *Henry*, 282 Mich App at 668-669. Indeed, the trial court was quite angry with what it viewed as a concerted and intentional effort by plaintiff to deny parenting time to defendant. And when plaintiff defiantly refused to acknowledge the court's concerns when prompted by the court for a response, the court warned plaintiff of its authority to change custody of the child if requested by defendant.

Plaintiff maintains that defendant could have simply pursued a motion for make-up parenting time, instead of seeking to hold her in contempt of court. We fail to see the logic in this argument. While defendant could have solely pursued make-up parenting time, he had every right to initiate show cause and contempt proceedings under the circumstances, and the finding of contempt is in no way undermined or negated merely because defendant could have sought make-up parenting time in the alternative. Furthermore, given plaintiff's entrenched recalcitrance relative to allowing parenting time to defendant and the fact that she was also violating the divorce judgment in regard to the cottage, defendant's decision to file a show cause motion to hold plaintiff in contempt was entirely reasonable.

### Sale of the Cottage

The judgment of divorce provided that the cottage was awarded to defendant, that he was to immediately list it for sale, that the proceeds of any sale were to be devoted to paying off existing state and federal tax debts, that plaintiff was to turn over the keys to the cottage within seven days of the judgment, and that plaintiff did "not have the right to use the cottage pending sale." There was overwhelming evidence that plaintiff violated the divorce judgment with respect to the cottage and its sale, including her own testimony that she had changed the locks. There was evidence that plaintiff used the cottage following entry of the divorce judgment, that she changed the locks, that she removed the lockbox, that she posted comments on YouTube in an attempt to disrupt or preclude any sale, that she contacted the land contract vendors inquiring about assumption of the land contract, that plaintiff sent threatening messages to the CB realtor and the purchaser's realtor in an effort to undermine and halt any sale, that plaintiff would not execute any paperwork necessary to finalize a sale, and that plaintiff emailed defendant stating that she "will be blocking the sale." This evidence constituted willful acts, omissions, or statements that impaired the authority and impeded the functioning of the trial court by circumventing the divorce judgment that had been lawfully entered by the court. *Dudzinski*, 257 Mich App at 108; *Robertson*, 209 Mich App at 436. The evidence established that plaintiff disobeyed the judgment of divorce as it pertained to the cottage. MCL 600.1701(g).

Plaintiff first raises the issue regarding defendant's alleged disregard of a possible purchase of the cottage by plaintiff's mother. We fail to see the relevancy of this argument. There was never a written offer by plaintiff's mother or father to purchase the cottage, and even had there been a valid and timely offer, plaintiff's remedy would have been to file a motion seeking an order to force defendant to accept the offer. It would not have excused her

-10-

contemptuous conduct, such as using the cottage in direct violation of the divorce judgment. Moreover, we find it telling that plaintiff never presented any testimony or affidavit from either parent showing an interest in purchasing the cottage, let alone revealing that an offer had been made.

Plaintiff contends that "[t]here was no damage, no harm, no loss, and no violation of any court order (including the judgment) and certainly no interference with any court obligation." We have already ruled that plaintiff violated and interfered with the divorce judgment. Plaintiff's argument regarding the absence of damage, harm, or loss is premised on her view that the purchase agreement was executed prior to the filing of the motion to show cause and that the sale of the cottage ultimately did occur – no harm, no foul. This argument borders on the nonsensical. Contempt of court is not washed away when the party who committed the contempt is unsuccessful in reaching his or her goal that served as the motivation for the contempt; unsuccessful contemptuous conduct is still contemptuous conduct. Further, there was damage, harm, and loss to defendant because plaintiff's actions forced defendant to commence contempt proceedings, resulting in defendant incurring legal expenses. When the motion to show cause was filed, a purchase agreement for the cottage had been executed; however, there had yet to be a closing, and plaintiff was doing her utmost to prevent consummation of the sale at a closing, necessitating defendant's court filing. Even after a closing was scheduled on July 24, 2015, as ordered by the trial court, it did not come to fruition, with the evidence suggesting that plaintiff's communications with the land contract vendors was causing uneasiness and delayed the closing. A closing did not take place until sometime after the evidentiary hearing on contempt was held. In sum, reversal is wholly unwarranted.

## III. DOCKET NO. 330925 – SANCTIONS – ATTORNEY FEES AND COSTS

### A. STANDARDS OF REVIEW

The trial court imposed attorney-fee and cost sanctions under the authority of MCL 600.1721 and MCR 3.206(C)(2)(b). This Court reviews for an abuse of discretion the decision to award attorney fees and the determination of the reasonableness of the fees. *Riemer v Johnson*, 311 Mich App 632, 657; 876 NW2d 279 (2015) (examining attorney fees under MCR 3.206[C]); *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015) (examining attorney fees under MCR 3.206[C]); *Taylor v Currie*, 277 Mich App 85, 99; 743 NW2d 571 (2007) (examining fees under MCL 600.1721). An abuse of discretion occurs only when a trial court's decision falls outside the range of principled outcomes. *Richards*, 310 Mich App at 699; *Taylor*, 277 Mich App at 99. Underlying findings of fact upon which a court relies to assess the reasonableness of attorney fees or to base its decision whether to award attorney fees are reviewed for clear error. *Riemer*, 311 Mich App at 657; *Richards*, 310 Mich App at 700; *Taylor*, 277 Mich App at 99. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Richards*, 310 Mich App at 700 (citation and quotation marks omitted). We review de novo issues concerning the construction of a statute or court rule. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

## B. SANCTIONS – GOVERNING PRINCIPLES

In divorce cases, including post-judgment proceedings, a party may request an order for the payment of attorney fees and expenses that "were incurred because the other party refused to comply with a previous court order, despite having the ability to comply." MCR 3.206(C)(2)(b). This provision, in and of itself, provides a basis for awarding attorney fees and expenses. *Richards*, 310 Mich App at 700. "MCR 3.206(C)(2)(b) considers only a party's behavior, without reference to the ability to pay." *Id.* at 701. For purposes of MCR 3.206(C)(2)(b), property and spousal support awards do not have any bearing on whether a party was forced to incur additional attorney fees and expenses due to the other party's failure to comply with a court order. *Id.* at 701-702.

MCL 600.1721, a statutory contempt provision, states in full:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

"[U]nder a plain reading of MCL 600.1721, a court must order a person found to be in contempt of court to indemnify any person who suffers an actual loss or injury as a result of the contemnor's misconduct." *Taylor*, 277 Mich App at 100. And the amount required to be paid under MCL 600.1721 "may include attorney fees that occurred as a result of the other party's contemptuous conduct." *Id.* (citation and quotation marks omitted).

In *Smith v Khouri*, 481 Mich 519, 528-530; 751 NW2d 472 (2008), our Supreme Court recognized that the reasonableness of attorney fees has been evaluated by examining such factors as those listed in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), and in Michigan Rule of Professional Conduct (MRPC) 1.5(a).[9] See also *Riemer*, 311

---

[9] The *Wood* factors are:

> "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." [*Wood*, 413 Mich at 588 (quotation marks and citation omitted).]

MRPC 1.5(a) provides:

> The factors to be considered in determining the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

Mich App at 658-661 (examining *Wood* and MRPC 1.5[a] in reviewing the reasonableness of the attorney fees awarded under MCR 3.206[C]); *Cassidy v Cassidy*, __ Mich App __, __; __ NW2d __ (2017); slip op at 14-15. The factors in *Wood* and MRPC 1.5(a) are not exclusive, and courts may consider any additional relevant factors. *Smith*, 481 Mich at 530. "In Michigan, the trial courts have been required to consider the totality of special circumstances applicable to the case at hand." *Id.* at 529.

A "reasonable hourly rate represents the fee customarily charged in the locality for similar legal services, which is reflected by the market rate for the attorney's work." *Id.* at 530. "The fees customarily charged in the locality for similar legal services can be established by testimony or empirical data found in surveys and other reliable reports[,] [b]ut . . . the fee applicant must present something more than anecdotal statements to establish the customary fee for the locality." *Id.* at 531-532. With respect to the reasonableness of the number of hours expended on a case, the "fee applicant must submit detailed billing records, which the court must examine and opposing parties may contest for reasonableness." *Id.* at 532. "If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence." *Id.* The party seeking an award of attorney fees has the burden of proving their reasonableness. *Id.* at 528-529; *Cassidy*, __ Mich App at __; slip op at 15.

## C. DISCUSSION

Plaintiff primarily argues, as she had done so below, that the attorney fees and costs were unreasonably incurred, considering that the factual circumstances did not show any violation of or noncompliance with the divorce judgment, did not establish contempt of court, and did not reveal any damages or loss caused by plaintiff's behavior. Plaintiff contends, therefore, that there was no need for defendant to litigate a claim of contempt. As ruled above, there was overwhelming evidence that plaintiff violated the divorce judgment and was in contempt of court and that defendant incurred legal expenses, as necessary to obtain plaintiff's compliance with the

---

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

divorce judgment, to close on the cottage's sale, and to procure parenting time. Attorney fees and expenses are recoverable under MCR 3.206(C)(2)(b) and can constitute "actual loss or injury" for purposes of MCL 600.1721, *Taylor*, 277 Mich App at 100. Accordingly, plaintiff's "reasonableness" argument relative to sanctions has no merit whatsoever. Defendant was entitled to sanctions under MCR 3.206(C)(2)(b) and MCL 600.1721.

Plaintiff also appears to argue that the award of attorney-fee sanctions cannot be upheld, because defendant failed to present expert testimony at the evidentiary hearing on sanctions. Plaintiff provides no authority in support of this proposition. Defendant supported his request for attorney fees with detailed invoices, an affidavit, survey materials, and the testimony of defense counsel, a highly experienced civil litigator; this was adequate to support the request and the award for attorney fees. There was no requirement that defendant elicit independent expert testimony on attorney fees.

Plaintiff next challenges the reasonableness of defense counsel's hourly rate of $350, which was accepted and approved by the trial court. Plaintiff points to the fact that only five percent of counsel's practice was devoted to family law, that the issues regarding contempt were simple and straightforward, even if the underlying divorce litigation may have been more complex, and that the average hourly rate for family law attorneys in Wayne County was $275. We cannot conclude that the trial court abused its discretion in determining that $350 per hour was a reasonable rate charged by defendant's attorney. Counsel's nearly 35 years of experience as a civil litigator, the nature of the proceedings, the survey information,[10] and the totality of the circumstances adequately supported the court's ruling.

Plaintiff next appears to argue that the sanctions should not have been awarded in light of her financial situation following the judgment of divorce. This is no defense to an award of attorney fees and expenses under MCR 3.206(C)(2)(b), *Richards*, 310 Mich App at 701, and MCL 600.1721 contains no language indicating that ability to pay is relevant in assessing contempt sanctions and making a damaged party whole.

Finally, plaintiff maintains that attorney fees connected to consultation with a CPA on IRS-related property matters were not relevant to the issue of contempt and should thus not have been awarded. We disagree, as plaintiff attempted to undermine and block a sale and closing on the cottage, the proceeds of which were to be used to pay off tax liabilities and eliminate liens on the cottage. Reversal is unwarranted.

## IV. CONCLUSION

The trial court did not err in holding plaintiff in contempt of court, nor did the court err in awarding defendant over $22,000 in attorney fees and costs associated with addressing plaintiff's contemptuous conduct.

---

[10] Defendant had submitted a survey by the State Bar of Michigan – Economics of Law Practice 2014 – showing that an attorney with 31 to 35 years' experience in the 95th percentile charged an average hourly rate of $515.

Affirmed. Having fully prevailed on appeal, we award defendant taxable costs pursuant to MCR 7.219.[11]

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello

---

[11] In his brief on appeal, defendant also requests sanctions for a vexatious appeal, MCR 7.216(C). Under MCR 7.211(C)(8), "[a] party's request for damages or other disciplinary action under MCR 7.216(C) must be contained in a motion filed under this rule." And MCR 7.211(C)(8) further provides that "[a] request that is contained in any other pleading, including a brief filed under MCR 7.212, will not constitute a motion under this rule."