# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. A. E. RODRIGUEZ, Minor.

UNPUBLISHED
October 2, 2018

Nos. 341930 and 342387
Kalamazoo Circuit Court
Family Division
LC No. 2016-000429-NA

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondents appeal as of right orders terminating their parental rights to their minor child. In Docket No. 341930, respondent-mother's parental rights were terminated under MCL 712A.19b(3)(g)[2] (failure to provide proper care or custody) pursuant to respondent-mother's consent. In Docket No. 342387, respondent-father's parental rights were terminated under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (other conditions cause the child to come within the court's jurisdiction), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if child is returned to parent) following an evidentiary hearing. We affirm in both appeals.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), filed a petition seeking removal of the child from respondents' care after he sustained severe burns over 10 to 15% of his body and it was discovered that respondents' residence fell below community standards because there was no electricity and insufficient food to meet the child's needs. Additionally, the child, five years old at the time, had not been enrolled in school and reportedly

---

[1] *In re Rodriguez*, unpublished order of the Court of Appeals, entered February 21, 2018 (Docket Nos. 341930 and 342387).

[2] MCL 712A.19b(3)(g) has been substantively amended, effective June 12, 2018. See 2018 PA 58. Under the version of the statute in effect at the time of these proceedings, parental rights could be terminated if "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." MCL 712A.19b(3)(g), as amended by 2012 PA 386.

-1-

begged for food and wandered the neighborhood unsupervised. The trial court authorized the petition and ordered that the child be placed in nonrelative foster care. Respondent-mother offered a plea of admission concerning the unfitness of the family home, which was accepted by the court. Respondent-father was adjudicated after testimony was taken at a separate hearing.

During the dispositional phase of the proceedings, both respondents underwent psychological evaluations that revealed, among other things, problems with substance abuse. Respondents were therefore required to participate in random drug screens; respondent-mother tested positive for amphetamine, methamphetamine, and marijuana on several occasions; and respondent-father tested positive for marijuana on several occasions. Adequate housing also remained a barrier to reunification throughout the case. For the majority of the dispositional phase, respondents resided with at least one other adult in a one-room, studio-style unit at a motel, which was deemed an inappropriate setting by the foster-care worker. Later in the proceedings, respondent-father relocated to another motel room, and respondent-mother moved in with the maternal grandfather after staying at a campground for an unspecified period of time. By the time of the permanency planning hearing held approximately one year after the child first came into foster care, the foster-care worker determined that respondent-father had made no recent progress toward reunification and respondent-mother's progress was minimal. Accordingly, the trial court authorized the DHHS to file an amended petition seeking termination of respondents' parental rights.

At the outset of the termination hearing, respondent-mother submitted a written consent to termination of her parental rights and answered court questioning regarding the consent. The trial court accepted respondent-mother's consent and entered an order terminating her parental rights the same day. The trial court then heard evidence concerning the progress made by respondent-father and the child since the inception of the case. The trial court took the matter under advisement and later issued a written decision and order terminating respondent-father's parental rights.

## II. STANDARD OF REVIEW

Generally, to preserve appellate review, the challenged issue must be raised before the trial court. See, e.g., *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014) (challenging constitutionality of guardianship); *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (challenging court's review of documents obtained after the close of evidence); *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008) (challenging timeliness of adjudication). Because neither respondent raised the issues they now pursue on appeal before the trial court, both issues are unpreserved. We review unpreserved issues for plain error affecting substantial rights. *In re VanDalen*, 293 Mich App at 135. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

Principles of statutory construction apply with equal force to interpretation of court rules. *In re McCarrick/Lamoreaux*, 307 Mich App 436, 446; 861 NW2d 303 (2014). That is, appellate courts begin by ascertaining the Michigan Supreme Court's intent as reflected in the plain

language of the court rule, *id.*, as well as "its place within the structure of the Michigan Court Rules as a whole," *Lech v Huntmore Estates Condo Ass'n (On Remand)*, 315 Mich App 288, 290; 890 NW2d 378 (2016) (quotation marks and citation omitted). This Court "must read the rule's provisions reasonably and in context," presuming that every word has meaning and avoiding "any interpretation that renders any part of the court rule surplusage or nugatory." *In re McCarrick/Lamoreaux*, 307 Mich App at 446-447 (quotation marks and citation omitted). If the court rule is unambiguous, it must be enforced as written. *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 325; 900 NW2d 680 (2017).

## II. DOCKET NO. 341930

In Docket No. 341930, respondent-mother argues that she should be permitted to withdraw her "plea"—in other words, her consent to termination of her parental rights—because it was not knowingly, understandingly, and voluntarily made, as required by MCR 3.971(C)(1). We disagree.

As an initial matter, respondent-mother's argument rests on the assumption that MCR 3.971—which governs a respondent's ability to enter a plea of admission or no contest to allegations in an original or amended petition, as well as the court's duties in accepting a respondent's plea—applies to her postadjudication consent to termination of her parental rights. Although a respondent is undoubtedly free to consent to termination, and a trial court is likewise permitted to accept the respondent's acquiescence, see *In re Toler*, 193 Mich App 474, 477; 484 NW2d 672 (1992), we disagree that MCR 3.971 is applicable in this case. Read in its entirety, it is evident that the rules and procedures set forth therein relate only to a plea offered during the adjudication phase of child protective proceedings. For instance, subrule (B)(3)(b) directs the court to advise the respondent that by offering a plea, he or she gives up the right to have the petitioner prove the allegations in the petition by a preponderance of the evidence. MCR 3.971(B)(3)(b). While the petitioner is indeed required to prove by a preponderance of the evidence one or more statutory grounds for exercising jurisdiction, *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014), that standard of proof is inapplicable to the statutory grounds for termination, which must be established by clear and convincing evidence, *In re Utrera*, 281 Mich App at 15. Thus, if we applied MCR 3.971 to a postadjudication consent to termination, the rule would effectively require the court to advise the respondent of an incorrect standard of proof. Similarly, MCR 3.971(B)(4) directs the court to advise the respondent "of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent." Clearly, this requirement would be superfluous in the context of respondent-mother's appeal challenging her consent to the very proceeding to terminate parental rights that is the subject of subrule (B)(4).

This is not to say that MCR 3.971 could never be applicable to a respondent's consent to termination of his or her parental rights. Indeed, where termination of rights is sought from the outset of the case, a respondent's plea of admission to the allegations in the initial or amended petition would come within the scope of MCR 3.971, even though the respondent's acquiescence could involve both an admission as to jurisdiction and the propriety of termination. We are cognizant of the fact that a trial court could reasonably look to MCR 3.971 as a template for accepting a respondent's admission or agreement concerning facts apart from jurisdictional grounds, as long as the requirements of the rule were modified to fit the context of the admission.

However, we cannot conclude that the trial court was *required* to strictly comply with MCR 3.971 in the circumstances presented by this case. Respondent-mother's reliance on MCR 3.971(C)(1) is simply misplaced because her consent was offered during the dispositional phase of the proceedings, months after her adjudication, and she has not directed this Court to any authority to support the application of that rule to a consent offered at a postadjudication termination hearing.

Furthermore, even if we were to conclude that MCR 3.971(C)(1) was applicable to respondent-mother's consent to termination, the record demonstrates that the court satisfied itself that respondent-mother's consent was knowingly, understandingly, and voluntarily made. After respondent-mother's attorney advised the court that respondent-mother had decided to consent to termination of her parental rights, the court questioned respondent-mother under oath about the consent, the procedural rights she was waiving, and whether she understood the effect of consenting to termination of her parental rights. Respondent-mother answered each of the court's questions in the affirmative, acknowledged that she had a continuing addiction to methamphetamine, and confirmed that she had not been threatened or forced to provide consent.

While it is true that the court asked respondent-mother a question ["And you aren't able to take care of him, is that right?"] which led to a moment of confusion, it also asked many pointed and clear questions in order to determine the validity of respondent-mother's consent. In particular, the court asked if respondent-mother understood that, on the basis of her consent, the court would enter an order "permanently terminating [her] parental right[s][.]" The court also acknowledged that respondent-mother had purportedly changed her mind a number of times, and clarified whether she clearly understood that she was admitting that termination was in the child's best interests and waiving her right to a trial. Respondent-mother was represented by counsel and unequivocally swore that she understood the effect of her voluntary consent.[3] To the extent that the trial court was required to satisfy itself that the plea was knowingly, understandingly, and voluntarily made, it properly did so in this case. Accordingly, respondent-mother has not established plain error affecting her substantial rights and she is not entitled to appellate relief. *In re VanDalen*, 293 Mich App at 135.

IV. DOCKET NO. 342387

In Docket No. 342387, respondent-father argues that he was denied due process when his request to have a judge, rather than a referee, preside over a dispositional review hearing was rejected, contrary to MCR 3.912(B). We agree that respondent-father was entitled to demand a judge, but disagree that the denial of his request amounted to a violation of due process or otherwise affected his substantial rights.

---

[3] Respondent-mother's suggestion that she did not fully understand what was happening at the termination hearing is plainly contradicted by her sworn testimony. To permit respondent-mother to negate her testimony at this juncture would be contrary to "public policy designed to protect the judicial process." See *People v White*, 307 Mich App 425, 431; 862 NW2d 1 (2014), quoting *People v Serr*, 73 Mich App 19, 28; 250 NW2d 535 (1976) (quotation marks omitted).

"Due process applies to any adjudication of important rights." *In re Brock*, 442 Mich 101, 110; 499 NW2d 752 (1993) (quotation marks and citation omitted). Because it is well-settled that parents have a constitutionally protected interest in the care, custody, and management of their children, they are entitled to due process when their parental rights are before the courts. *In re TK*, 306 Mich App at 706. "Procedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker." *Id*. The purpose of substantive due process is to prohibit arbitrary deprivation of protected interests. *Id*.

When the parties appeared for a dispositional review hearing on June 2, 2017, respondent-father requested that the hearing be adjourned so that his appointed attorney could be present.[4] Respondent-father also expressed his preference for a judge and asked if "a judge could be present?" A foster-care worker explained that a referee would preside over the hearing,[5] and the referee agreed, saying, "Yeah, the judges usually don't do review hearings, so it would be someone like me." The hearing was rescheduled to June 12, 2017, and took place before another referee without objection.

In support of his due-process challenge, respondent-father relies on MCR 3.912(B), which provides:

> **(B) Right; Demand.** *The parties have the right to a judge at a hearing on the formal calendar.* A party may demand that a judge rather than a referee preside at a nonjury trial by filing a written demand with the court within:
>
> (1) 14 days after the court gives notice of the right to a judge, or
>
> (2) 14 days after an appearance by an attorney or lawyer-guardian ad litem, whichever is later, but no later than 21 days before trial.
>
> The court may excuse a late filing in the interest of justice. [Emphasis added.]

For purposes of subchapter 3.900 of the court rules, the phrase "formal calendar" refers to "judicial proceedings other than a delinquency proceeding on the consent calendar, a preliminary inquiry, or a preliminary hearing of a delinquency or child protective proceeding." MCR 3.903(A)(10).

Because this case does not involve juvenile delinquency proceedings, the first sentence of MCR 3.912(B) effectively states that a party has the right to a judge at any judicial proceeding other than a preliminary inquiry or preliminary hearing. Therefore, it appears that respondent-

---

[4] Respondent-father was represented at the hearing by substitute counsel. The adjournment was also granted in order to facilitate appointment of new counsel for respondent-mother.

[5] This explanation was attributed to an unidentified individual in the transcript from the June 2, 2017 hearing. However, the speaker was identified as a substitute foster-care worker moments before the statement was made.

father is correct in his assertion that he was entitled to demand a judge at the dispositional review hearing pursuant to MCR 3.912(B). In its appellate brief, DHHS points out that respondent-father never filed a judge demand in writing. However, the plain language of MCR 3.912(B) limits the writing and timing requirements to a "demand that a judge rather than a referee preside at a *nonjury trial . . . .*" (Emphasis added). The rule provides no such requirements with respect to a judge demand for other hearings on the formal calendar.

Although MCR 3.912(B) seemingly provides an unequivocal "right to a judge at a hearing on the formal calendar," we note a degree of tension between this right and the provisions of MCR 3.913 concerning the participation of referees in certain types of cases. Under MCR 3.913(A)(1), "the court may assign a referee to conduct a preliminary inquiry or to preside at a hearing other than those specified in MCR 3.912(A)[6] and to make recommended findings and conclusions." In addition, "[u]nless a party has demanded trial by jury or by a judge pursuant to MCR 3.911 or 3.912, a referee may conduct the trial and further proceedings through disposition." MCR 3.913(B). Thus, MCR 3.913(B) could be read as suggesting that a party who fails to request a trial by judge in the manner set forth in MCR 3.912 effectively waives his or her right to a demand a judge later in the proceedings. Nonetheless, we reject this interpretation because it is at odds with a statutory provision addressing the same subject. Specifically, MCL 712A.10(1) states, in pertinent part, that "the judge may designate a probation officer or county agent to act as referee in taking the testimony of witnesses and hearing the statements of parties upon the hearing of petitions alleging that a child is within the provisions of this chapter, *if there is no objection by parties in interest.*" (Emphasis added). Because this provision makes clear that a court's authority to appoint a referee in child protective proceedings is limited, we will not construe the court's authority to appoint a referee under MCR 3.913(A)(1) or the duration of that assignment as set forth in MCR 3.913(B) as negating a respondent's right to demand a judge at later proceedings on the formal calendar without having first demanded a trial by judge under MCR 3.912. Accordingly, the referee erred by denying respondent-father's request for a judge at the rescheduled dispositional review hearing.

However, it does not follow that the referee's plain error deprived respondent-father of due process. Respondent-father was aware that the dispositional review hearing would take place and appeared at the hearing with counsel. Although the hearing was conducted before a referee, rather than a judge, respondent-father does not contend that the referee was anything other than a neutral decision-maker, and we do not glean any bias or other impropriety from the record. In addition, had respondent-father been dissatisfied with the referee's findings or recommendations, he was free to request judicial review using the procedures outlined in MCR 3.991 or a rehearing pursuant to MCR 3.992. See also MCL 712A.21(1) (providing right to rehearing). Respondent-father did not challenge the referee's findings or recommendations under either procedure and, indeed, does not take issue with the manner in which the review

---

[6] MCR 3.912(A)(1) states that a judge must preside at (1) a jury trial; (2) a waiver proceeding under MCR 3.950; (3) the preliminary examination, trial, and sentencing in a designated case; and (4) a proceeding on the issuance, modification, or termination of a minor personal protection order. None of these proceedings are at issue in this case.

hearing proceeded or the resulting order recommended by the referee and later entered by the trial court judge. In sum, the review hearing was fundamentally fair and complied with the requirements of due process. See *In re TK*, 306 Mich App at 706.

For similar reasons, respondent-father cannot establish that the referee's error affected his substantial rights. Again, respondent-father was not arbitrarily deprived of his parental rights and the hearing was conducted with notice, a meaningful opportunity to be heard, and an impartial decision-maker. See *id*. According to respondent-father, he was prejudiced by the denial of his request for a judge because it "caused him to seriously question the [c]ourt's credibility and question the benefit of following orders requiring him to make significant lifestyle changes," which, in turn, "caused him to delay his efforts at reunification until it was too late to prevent termination of his parental rights." This argument is wholly without merit for several reasons.

First, respondent-father's suggestion that his noncompliance was attributable to the denied request for a judge is completely disingenuous considering his inconsistent compliance with the case service plan between the time of his adjudication in December 2016 and the June 2017 review hearing. Second, to the extent that respondent-father's confidence in the referee or the court was undermined by the erroneous ruling, the appropriate reaction would have been to challenge the perceived error, rather than ignoring the requirements of his case service plan. See *Johnson v White*, 261 Mich App 332, 346; 682 NW2d 505 (2004) (stating that "an order of the court must be complied with at the time it is entered even if the order is clearly incorrect," and "[a] person may not disregard a court order simply on the basis of his subjective view that the order is wrong or will be declared invalid on appeal") (quotation marks and citation omitted). Third, there is no suggestion that respondent-father was unaware of the nature of the child protective proceedings or that his active participation was essential if he wished to retain his parental rights. Instead, respondent-father's position is reflective of the essence of the entire case and the ultimate reason for the termination of his parental rights; that is, respondent-father's continual reliance upon excuses for failing to comply with, or benefit from, the case service plan or to prioritize the child's needs to the best of his ability regardless of perceived barriers. Simply put, this Court will not condone respondent-father's attempt to shift the fault for his own actions to the trial court on the basis of a procedural error, particularly when there is no suggestion that the substance of the proceedings were affected.

Affirmed.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica